## ANNA L. WHITEHURST TAYLOR v. CLAIRE J. ULRICH WHITEHURST.

*Equity Proceeding—To Rescind Release—Fraud—Return of Consideration—Admissions by Demurrer—Laches— Parties—Use of Fictitious Names.*

On a demurrer to a bill to rescind a release by plaintiff of her claims as the alleged widow of defendant's decedent, the failure of the bill to allege a return, or offer of return, of the money received by her as a consideration for the release, was justified, in view of the fact that, in case the release was annulled, plaintiff would as widow be entitled to a far greater sum than so received by her, and since, by reason of the actual distribution of the estate, the annullment of the release and the return of the consideration would not place the parties in the position in which they were as regards each other before the execution of the release. pp. 631-636

It cannot be contended that the allegation in a bill of an existing fact, such as marriage, is not to be taken as true for the purposes of a demurrer to the bill, merely because the bill contains statements showing that such fact has been at times disputed by defendant. p. 636

In a suit by the alleged widow of decedent against the latter's mother, to whom the estate had been distributed as sole distributee, in which the plaintiff sought a decree for her widow's share of his estate, it was unnecessary to make the administrators parties, since they would not be affected by the relief prayed. p. 636

In a suit against decedent's mother, who was his sole distributee and one of his administrators, by decedent's widow, to set aside a release of her rights in his estate, for fraud in its procurement, allegations that defendant's son, her co-administrator, and her attorney, were present when the release was executed, and that she paid plaintiff's attorney for his services in procuring the release, sufficiently alleged the manner in which

defendant acquired knowledge of the fraud, and incurred responsibility therefor.                                       p. 637

In determining whether one who seeks to avoid a contract for fraud has acted without delay on discovering the fraud, all the facts and circumstances of the case must be considered.

pp. 637, 638

A bill to set aside a transaction for fraud, which showed that the bill was not filed till nine months after the transaction, and which stated that the fraud was not discovered until some time after the transaction, without definitely stating the time of the discovery, *held* not demurrable on the ground of laches.   · p. 638

That, in a suit to set aside a transaction for fraud, the bill designated by fictitious names merely the attorneys concerned in the fraud, *held* not ground for sustaining a demurrer to the bill, this not being made a specific ground of demurrer, and not being definitely objected to by the defendant.         p. 638

*Decided December 10th, 1926.*

Appeal from the Circuit Court of Baltimore City (SOLTER, J.).

Bill by Claire J. Ulrich Whitehurst against Anna L. Whitehurst Taylor. From an order overruling a demurrer to the bill, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Vernon Cook,* for the appellant.

*William L. Marbury* and *William R. Semans,* with whom were *Edgar A. Martin* and *Randolph Barton, Jr.,* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from an order of court overruling demurrer to a bill in equity, filed by the appellee, Claire J. Ulrich Whitehurst, against the appellant, Anna L. Whitehurst Taylor.

The facts alleged in the bill, that are essential to the decision of the questions presented by the demurrer, are substantially as follows:

On January 30th, 1924, Charles E. Whitehurst of Baltimore City died intestate, and on February 7th, thereafter, letters of administration upon his estate were granted by the Orphans' Court of Baltimore City to M. Morris Whitehurst and J. Herbert Whitehurst, his brothers, and Anna L. Whitehurst Taylor, his mother, all of whom qualified as such administrators. On August 8th, 1924, the appellee filed, in said orphans' court, a petition alleging that she was the widow of the said Charles E. Whitehurst, and as such was entitled to administer upon his estate, and alleging therein that the letters of administration granted to the brothers and mother of the deceased were improvidently granted and should be revoked. To this petition, the said administrators filed an answer, denying that the petitioner was the widow of Charles E. Whitehurst, and asserting therein that he died unmarried.

Before any action was taken upon that petition, the appellee, who at that time resided in Pittsburgh, Pennsylvania, at the request of her New York attorney, designated as "Brown" in the bill, went to the City of New York. Upon her arrival there on the evening of January 8th, 1925, she went to the home of a friend, where she was visited by one designated in the bill as "Smith", a representative of her attorney "Brown", and through whom she had been induced to employ "Brown." She was there told by "Smith" that he was delighted that she had arrived safely in the City of New York, as both he and "Brown" feared personal violence to her from the Ku Klux Klan, who were, as he said, looking after the interests of the appellant, and who had assured the latter that the appellee would never appear in court to press her claim against Whitehurst's estate, nor would she ever be able to go below the Mason and Dixon line in safety. She was also told by "Smith" to remain in seclusion at the home of her friend, and not to take a room in a public hotel, as detectives were watching her and violence might be inflicted

upon her if found in the City of New York, that she would, upon some pretext or other, be arrested and imprisoned. She was also told by "Smith" that he had learned that her Baltimore counsel had determined to abandon her and to leave her without representation in the court there, and that he and her attorney "Brown" were "the only ones standing by and protecting her interests", though they had been. offered by the Whitehursts a considerable amount of money to abandon her, but they were more interested in having justice done her than in receiving remuneration for themselves, and that "money could not sway them from their determination to protect her interests."

At his suggestion, she met "Smith" the following morning, January 9th, 1925, at the Hotel Commodore in the City of New York. Here he stated to her that, in view of the facts told to her on the previous evening, "Brown" had arranged a settlement with the Whitehursts. He further stated that an arrangement had been made for her to meet the Whitehursts at "Brown's" office on that morning at 10.30 o'clock, to sign the agreement which had been prepared, and reminded her that they had but ten minutes in which to reach Brown's office. The appellee accompanied him to "Brown's" office, which she entered by going through a restaurant, for the reason, as stated by "Smith", that it would not be safe for any one to see her entering the building where "Brown" had his office.

On arriving at the office, "Brown" told her that he had reached an agreement with the Whitehursts by which she would be recognized as the widow of Charles E. Whitehurst deceased, and in addition thereto, she would receive the sum of $11,000 in cash, if she immediately signed the agreement which he then and there presented to her for her signature, and which he urgently advised her to execute, at the time saying, in the presence of "Smith", that all of her witnesses had been bought by the Whitehursts, "that the Ku Klux Klan would get her if she did not accept the offer made by the said Whitehursts; that the Whitehursts had procured to be issued in the City of Baltimore, * * * a warrant for her

arrest * * * and that she would be arrested * * * if she entered the State of Maryland." He also told her that her attorneys in Maryland were going to desert her and that he could not protect her or her interests in that state, as he had not been admitted to practice therein. Believing all that had been told her by both "Smith" and "Brown" to be true, she signed the agreement, which is in the nature of a quit claim deed and is as follows:

"This deed made this 9th day of January in the year nineteen hundred and twenty-five, by Claire J. Ulrich of New York City, New York.

"Whereas, Charles E. Whitehurst, late of Baltimore City, Maryland, deceased, died intestate on the thirtieth day of January, nineteen hundred twenty-four, and

"Whereas, Claire J. Ulrich claims to be the widow of said Charles E. Whitehurst, and to have the right to share in his estate and to use his name, and

"Whereas, the said Claire J. Ulrich is desirous of selling all of the aforementioned rights and particularly any right that she may now have or thereafter acquire as the alleged widow of Charles E. Whitehurst, in the estate of said Charles E. Whitehurst, or the estate or estates of any other members of the Whitehurst family, or any claim, demand or right of action whatsoever against any one connected with the said Whitehurst family, and

"Whereas, Anna L. Whitehurst Taylor, known as Anna L. Whitehurst, is willing to purchase all of the aforementioned rights, or alleged rights of the said Claire J. Ulrich, and particularly any and all rights that she may now have or hereafter acquire as the alleged widow of the said Charles E. Whitehurst, both in law and equity,

"Now, therefore, this deed witnesseth:

"For and in consideration of the premises and the sum of five ($5.00) dollars and other valuable considerations, the receipt of which is hereby acknowledged, the said Claire J. Ulrich does hereby grant, convey, assign, release and quit claim unto said Anne L. White-

hurst Taylor, known as Anne L. Whitehurst, her heirs, personal representatives and assigns, all the rights hereinbefore set forth, particularly all her right, title and interest whatsoever in law or equity, in and to any part of the estate or real property of the said Charles E. Whitehurst, and any and every claim demand, and right of action of whatsoever character which the said Claire J. Ulrich may now have or hereafter acquire against the estate of Charles E. Whitehurst, or the estate or estates of any other members of the said Whitehurst family, both in law and in equity, as the alleged widow of Charles E. Whitehurst, in, to or over any and all of the estates or property, real or personal, or both, of whom the said Charles E. Whitehurst died seized or possessed, as well as any other claim, demand right of action whatsoever in law or equity which the said Claire J. Ulrich may have against Anne L. Whitehurst Taylor, known as Anne L. Whitehurst, or other member of the said Whitehurst family.

"As witness my hand and seal the day and year first above written.

> "Mrs. Claire J. Ulrich Whitehurst,
> "Mrs. C. E. W.,
> "Claire J. Ulrich.

"Witness: R. Sattler.

"Accepted for the estate of Charles E. Whitehurst.
> "By M. Morris Whitehurst, Administrator."

Attached thereto is a certificate of acknowledgment of the execution of the paper by M. Morris Whitehurst, administrator, before a commissioner of deeds of New York.

The bill further alleged that at the time of the execution of the deed or instrument of writing above stated, the Whitehursts, including the appellant and her sons, individually and as administrators, were represented by an attorney of the City of Baltimore, designated in the bill as "Jones", who stated to the appellee that the agreement presented to her for her signature, and which she there signed, acknowledged her as the widow of Charles E. Whitehurst, deceased, and upon its execution by her, she was handed a check drawn, as

she recalls, by M. Morris Whitehurst, to the order of the said "Jones", for the sum of $11,000, and endorsed by "Jones" to the order of the appellee. Out of the proceeds of the check she paid "Brown" the sum of $1500, as his fee for representing her, believing at the time that said sum would be the only compensation he would receive for such services, but from information since obtained she claims that M. Morris Whitehurst and said "Jones", acting for the defendant, paid said "Brown", without the knowledge of the appellee, the sum of five thousand dollars for his services in connection therewith.

It is further charged in the bill that in the negotiations resulting in the procurement of the instrument executed by her and the said settlement, M. Morris Whitehurst, one of the administrators, and said "Jones," an attorney, represented and acted for the appellant and also for all of said administrators.

It was further charged in the bill that the representations specifically stated therein, made by "Brown", "Smith", and "Jones", were untrue and were made by them with the full knowledge of M. Morris Whitehurst and the defendant, who knew them to be false, and that, had they not been made, the appellee would never have executed said agreement or instrument of writing. Moreover, had she known of the falsity of the representations made by "Brown", "Smith" and "Jones", as to the attitude of her Baltimore counsel, she would have secured their opinion before agreeing to the proposed settlement, and this in all probability would have resulted in further discussion of the case, with the consequent development of the fact, then unknown to them, as well as to "Brown", of the existence of the documentary proof of marriage which she had disclosed to the attorney first employed by her, but, being told by him that the same had no value or importance in establishing the marriage, she had never mentioned it to "Brown," and it was not until after she had signed the instrument and had heard of the falsity of said representations, and not until after she had employed other counsel, that she learned of the alleged value and importance of such documentary evidence.

On January 31st, 1925, the administrators filed in the Orphans' Court of Baltimore City their first administration account, a copy of which was filed with and as a part of the bill. As shown by this account, the administrators distributed the personal estate, aggregating $278,267.45. Of this amount $5,113.89 is shown to be applied to debts, taxes, costs of administration, etc., and the net balance of $271,716.48, of which $245,610.00 was composed of stocks of various kinds, and $26,106.48 of cash, was thereby distributed to the defendant Anna L. Whitehurst Taylor, the mother and sole distributee of the deceased, it being stated in the account that Charles E. Whitehurst died unmarried.

It is then alleged in the bill that the appellee, as the widow of the said Charles E. Whitehurst, who died intestate and without issue, was and is legally entitled to a one half share or portion of his estate and that, of the amount ($271,716.48) distributed, she was and is entitled to $135,858.24, whereas the only amount she has actually received is the aforesaid sum of $11,000, paid her at the time of the alleged settlement of her claim, or approximately eight per cent. of the estate legally due and payable to her.

The bill then charges that one half of the amount so distributed to Anna L. Whitehurst Taylor was properly distributable to the appellee, as surviving widow of Charles E. Whitehurst, and that the same should be decreed to be paid over to the appellee by the said Anna L. Whitehurst Taylor, who should further be decreed to have received and now to hold the same in trust for the benefit of the appellee.

The bill then deals with the alleged marriage of the appellee to Charles E. Whitehurst, of which it is said:

"On or about the 21st day of March, 1923, in the City of New York, where the appellee was then residing, she and the said Charles E. Whitehurst became engaged and mutually agreed that they would marry one another," and later agreed that the marriage should be performed in the City of New York on the 9th day of April, 1923, and as

alleged in the bill, the marriage was in fact performed on
that day in the presence of one witness.   The mode of its
performance and celebration was the reading by Charles
E. Whitehurst of the marriage service as contained in the
Catholic Prayer Book, and as stated in the bill, "when the
clauses and paragraphs in said service were reached in
which the parties are respectively asked whether he or she,
as the case may be, accepts the other as his or her wedded
spouse, each of said parties answered 'Yes' * * * and that
during the reading of said marriage service, as further evi-
dence of their becoming husband and wife," the parties in
the presence of each other and of said witness, wrote their
respective Christian names "Charles" and "Claire" in two
places; as shown by the photostat copy of the pages of the
prayer book which are made part of the bill; and in addi-
tion to this, Charles E. Whitehurst placed upon the finger
of the appellee a "wedding ring," which she at all times
since has had, in which he caused to be engraved the initials
"C. E. W." and "C. J. W."

The bill then alleges that both the appellee and Charles
E. Whitehurst fully intended that the ceremony and the
making of the mutual promises therein made should consti-
tute them husband and wife, and that both of them under-
stood and believed that the same would have that legal
effect, and that the marriage so celebrated and entered into
by them was in all respects a complete valid and lawful
marriage.

The bill further charged that not only was this the belief,
understanding, and intention of both Charles E. White-
hurst and the appellee, but that such belief and under-
standing were correct; and that under the law then in force
in the State of New York, where said marriage was thus
celebrated, both by their mutual agreement and the cere-
mony thus followed, the same was in all respects lawful,
valid, and binding, and did constitute said parties husband
and wife, as fully and completely as though performed or
celebrated by a priest or by any civil officer or official, or by
any other person or in any other manner.

The reason assigned for adopting such service or cele-bration of marriage was, as stated in the bill, to conceal the fact of their marriage from "Whitehurst's family," inas-much as he had promised his mother, the appellant, that he would not marry during her lifetime.

The bill then charges that, after said celebration of mar-riage, believing they were married, the parties thereto entered upon the relations of husband and wife, and lived together as such in an apartment in the City of New York, and the appellee was there recognized, introduced, and held out by Whitehurst as his wife, to various persons, where it became necessary to explain her relation with Whitehurst and "where no necessity or desire of concealment on his part existed."

It is then stated in the bill that the appellee, upon learn-ing in January, 1924, of Charles E. Whitehurst's critical illness, hurried to Baltimore, where she tried to get access to him, explaining to his family that she was his wife, but she was not allowed to see him and in one or two days thereafter she learned that he was dead and, not hearing when or where he was to be buried, she was given no oppor-tunity to attend his funeral. Thereafter, she returned to New York and for some weeks her husband's New York lawyer, on behalf of the Whitehurst family, paid the rent of the apartment in which she lived, and sent her periodical allowances, which led her to believe her rights would be recognized, but these allowances were discontinued and, as a result thereof, she employed counsel to aid her in the enforcement of her rights as the widow of the said Charles E. Whitehurst, deceased.

The bill then concludes with the following prayers:

First: That this court may judicially determine and decree that the plaintiff was, at the time of the death of the said Charles E. Whitehurst, the lawful wife of the said Charles E. Whitehurst, and was upon his death, intestate, entitled, as surviving widow, to a one-half portion of his estate.

Second: That the purported sale and assignment, dated January 9, 1925, may be declared null and void.

Third: That the defendant Anna L. Whitehurst Taylor may be required and decreed to account for and surrender to the plaintiff any portion of the estate left by the said Charles E. Whitehurst, which may actually have been distributed and transferred to her, in excess of one-half of the total estate passing, plus the sum of eleven thousand dollars.

Fourth: And for such other and further relief as her case may require.

The grounds of the demurrer to the bill were as follows:

First: That there is no allegation in the bill alleging that the plaintiff returned or offered to return the money paid to her as a consideration for the execution by her of the instrument of writing mentioned in the bill.

Second: That M. Morris Whitehurst, J. Herbert Whitehurst and Anna L. Whitehurst Taylor, administrators of Charles E. Whitehurst deceased, should have been made parties to the bill.

Third: That there is no sufficient allegation in the bill as to when, where, how, by what means, or under what circumstances the defendant or her attorneys received any knowledge of the fraud alleged to have been practiced on the plaintiff by "Brown" and "Smith."

Fourth: That the plaintiff is guilty of unreasonable delay and laches in the filing of her suit asking for the relief sought.

The appellant, by the first ground of her demurrer, invokes the equitable doctrine of restitution, which makes it a condition precedent to the right of rescinding a contract that the party against whom relief is sought shall be restored substantially to the position he occupied before the transaction complained of. *Bigelow on Fraud,* vol. 1, p. 420. And in an attempt to apply this doctrine to the case before us, she claims that the appellee should have alleged in the bill that she returned, or offered to return, to the appellant the amount received by her in consideration of

her signing and executing the instrument of writing by which she released or assigned all her interest and rights in the estate of her alleged husband, Charles E. Whitehurst, deceased.

To this doctrine or rule, there is a well recognized exception, which is, "that one who attempts to rescind a transaction on the ground of fraud, mistake, or otherwise, is not bound to restore that which he has received by virtue thereof, when, in any event, he is entitled to retain it as indisputably. his own, no matter what may be the fate of his effort to rescind the transaction." *Williston on Contracts,* sec. 1530.

This exception is otherwise stated in *Corpus Juris,* vol. 9, p. 1210, where it is said, "One who seeks to rescind an instrument is not bound to restore that which he would be entitled in any event to retain," or as again stated in the same work, in volume 9, page 1242, "where the party electing to rescind has received only what he must be deemed entitled to keep irrespective of how the suit may terminate, no offer of restoration in the bill of complaint is necessary."

Both the appellant and appellee, as we understand, recognize and admit the existence of both, the rule and the exception. They differ, it seems, only upon the question of application. The appellant contends that to this case the rule applies, while the appellee insists that the exception applies.

The bill alleges that the appellee and Charles E. Whitehurst were in all respects validly married, and for the purpose of the demurrer, the appellee contends, such allegation must be taken as true. It is for this reason that the appellee claims that the exception to the rule applies, for if the marriage is admitted, then, upon the annulment of the release or assignment, the appellee will be entitled to a far greater sum than that she received from the appellant in consideration of the release or assignment of her interest and rights, as widow, in the estate of her alleged husband;

and should the release or assignment stand, she will be entitled to retain the amount paid her by the appellant.

Counsel for the appellant in his brief admits that "this contention would, of course, be sound, if the statement that the bill alleges a valid marriage told the whole story, but the vice of the contention consists in the fact that, in the proposition as stated, the plaintiff's attorneys deliberately close their eyes, and ask the court to close its eyes, to a long list of countervailing facts set forth in the bill which show that the marriage is not and never was an admitted or conceded marriage but is on the contrary a disputed marriage now in litigation in this very case." "If a bill alleged a marriage and nothing more bearing on that subject, a demurrer would admit the fact of marriage, but this bill shows very clearly that the marriage is in fact, not an admitted marriage, but on the contrary, a disputed marriage. The bill shows that the alleged marriage was performed in a most unusual manner. It was kept secret from the defendant's family. Its existence was denied by the defendant's family. The plaintiff was denied admission to their home during Mr. Whitehurst's final illness. The family took out letters of administration on the theory that the plaintiff was not Mr. Whitehurst's wife. Six months later, when the plaintiff made her first move to establish her claim and file her petition in the orphans' court, alleging that she was the widow of Charles E. Whitehurst, deceased, the allegations of the petition were denied in an answer."

The effect of the appellant's contention is that an allegation of an existing fact, such as marriage, is not, for the purpose of a demurrer, to be taken as true, when there are statements in the bill showing that such fact is disputed by the defendant. The fact that the marriage was performed in an unusual manner, or that the plaintiff was denied admission to the home of his family while Whitehurst was sick, do not in themselves deny or dispute the existence of the marriage. The only statement in which it is shown that the marriage was actually denied or disputed is that found

in the answer of the administrators to the petition of the appellee, alleging that letters of administration previously granted to the defendant and her sons were improvidently granted and should be revoked, and it was thereafter, while the proceedings were pending under such denial, that the settlement was made and the release or assignment executed, when the appellee, as alleged in the bill, was assured, not only by "Brown" and "Smith" but also by "Jones," the attorney acting for the administrators, that by the release or assignment which she was asked to sign, and which, at their request, she signed, fully admitted and recognized that she had been the lawful wife, and hence, at such time, the legal widow, of said Charles E. Whitehurst, deceased, "without necessitating a court decision to that effect." It was then "at her insistence they caused said instrument to be signed by said Whitehurst, in order to evidence (as she supposed and they assured her it did) such recognition of the status as widow." At the time, as stated in the bill, she did not understand the legal terminology and legal effect of the written instrument, but relying on what had been told her by "Brown," "Smith" and "Jones," she signed the instrument, believing that it in effect recognized her as the legal widow of Charles E. Whitehurst, deceased, and not until some time thereafter was she told by a friend that it did not recognize and establish her status as such widow. This it seems, is the "picture'" that is presented by the bill, which differs materially from that produced by the facts alleged in *Hite v. Mercantile Trust Co.,* 156 Cal. 765, which is largely relied on by the appellant in the support of her contention.

In that case the plaintiff, Lucy Hite, alleged that she married John R. Hite in 1872, and that said marriage remained in force until his death April 18th, 1906. In 1898 she began an action against Hite for a divorce and a division of the community property, which Hite answered, denying the marriage relation. Thereafter, in 1900 and 1901, certain agreements were entered into by them which

she claimed were fraudulently obtained by him. The bill then alleged that the action for divorce was thereafter tried and judgment given therein that she was not and never had been the wife of said Hite. It was to annual that judgment, which she claimed was obtained by fraud, and to annul the agreements mentioned, that the bill was filed. It will thus be seen that though she alleged in general terms that the marriage was in full force at the time of his death, she further alleged that, prior to that time, in an action for a divorce, a judgment had been rendered against her to the effect that she was not and never had been the wife of Hite. This specific allegation was in direct contradiction with the former general statement that at the time of his death she was his lawful wife. Moreover, in that case, the court, in discussing the sufficiency of the bill under a demurrer filed to it, said: "When John R. Hite died, the marriage was dissolved and the divorce action, if then pending, or if now reopened, would necessarily abate and would fail because its subject-matter, the marriage relation, had ceased to exist, * * * As she has shown no right to have this agreement set aside or disregarded, it follows that she fails to show that the setting aside of the judgment would give her any right or interest in the property, the only remaining subject of the litigation. Equity will never interfere to vacate a judgment where the party seeking the relief could not possibly derive any benefit from the relief sought", and the court sustained the demurrer to the bill.

It may also be said, in answer to appellant's contention, that it would be difficult, if not impossible, to place the parties to this suit in the position they were, in respect to each other, before the execution of the release or assignment, or to restore them to their former status. For if the money received by the appellee from the appellant for and in consideration of said release or assignment should be returned to the appellant, the parties would still not be in the position they were before the execution of the release or assignment. At that time the entire estate of the decedent was in the hands of the administrators, undistributed, and at such time there

was a proceeding pending in the orphans' court in which the appellee had filed her petition, asking for revocation of the letters of administration granted the appellant and her sons upon the decedent's estate, on the ground that she was his widow, and in which proceedings the administrators had answered that petition, denying that the appellee was the widow of Charles E. Whitehurst, deceased. The petition and answer had not been heard, and until they were heard or disposed of, no distribution of the estate could have been made. This is not the present status of the parties. The appellee has the $11,000 paid to her by virtue of the settlement, which, as she was told, recognized her as the widow of Charles E. Whitehurst; and since the execution of the release and assignment, the estate of the decedent has been distributed by the administrators, and the entire estate, after the payment of debts, costs, etc., has passed into the hands of the appellant under that distribution. This was done by virtue of the settlement which enabled the administrators to have the petition and answer disposed of on terms favorable to them. The return of the money alone would not restore the former status of the parties.

We will further add, that we cannot accept the contention of the appellant that the allegation of marriage found in the bill, with its alleged recognition by the appellant's attorney made at the time of the settlement with the appellee, is not to be taken as true for the purpose of the demurrer, merely because the bill contains certain statements which indicate or disclose that at other times the marriage was disputed by the defendant. It would be rather difficult to suppose a case where some of the important allegations of the bill, made by the plaintiff in support of the relief sought by him, are not shown by it to be disputed by the defendant. If this were not so, there would seem to be no real necessity for a suit to enforce the relief sought. To adopt in this case the appellant's contention would, we think, violate the rule so universally recognized and followed in this and other jurisdictions, that all well pleaded facts alleged in the bill are to be taken as true for the purpose of the demurrer.

In this case, we think, the allegation of marriage is, for the purpose of the demurrer, admitted, and the case is controlled by the principles enunciated in *Hall v. Hall,* 147 Md. page 184.

The second ground of the demurrer, which is not argued by the counsel of the appellant in his brief and which it seems is not pressed by him is, we think, without merit. The relief sought by the appellee in her bill, is against the defendant alone and, as stated in the brief of the appellee, if such relief is granted, her co-administrators will not be affected thereby.

The third ground of the demurrer is that the bill does not sufficiently allege when, how, by what means, and under what circumstances, the appellant Anna L. Whitehurst Taylor acquired knowledge of the fraud practiced on the appellee, Claire J. Ulrich Whitehurst, by "Brown" and "Smith." As to this ground of the demurrer, it will be recalled that M. Morris Whitehurst, her son and co-administrator, and "Jones" her attorney, were both present at the meeting in New York, when the release or assignment was executed and they heard, at that time, many of the alleged fraudulent representations made by "Brown" and "Smith."

It will also be borne in mind that the bill alleges that "Brown" received from the appellant for his services, in the procurement of the release or assignment, the sum of five thousand dollars, which shows that he was serving her in procuring the settlement. Upon the facts alleged in the bill this employment by her of "Brown", the attorney for the appellee, carries with it a strong implication of bribery, and from such alleged employment, the appellant, we think, was charged with the consequences of his acts and misrepresentations in connection with the settlement.

The fourth ground of the demurrer is laches. It is no doubt the settled law of this and other states, that an injured party, wishing to avail himself of the fraud to avoid a contract, must, upon the discovery of such fraud, exercise his right of rescission without delay. This requirement is founded upon an obvious principle of justice. *Foley v.*

*Crow,* 37 Md. 51; *Latrobe v. Dietrich,* 114 Md. 8.  But in determining, in any given case, whether the party has so acted, the decision must be made upon all the facts and circumstances of the case.  *Malkus v. Richardson,* 124 Md. 229.  What would be unjustifiable delay in one case would not be so regarded in another.

The record discloses that the bill in this case was not filed until over nine months after the execution of the release or assignment, but it is not definitely stated in the bill just when the fraud was discovered, though it is said in general terms that the discovery was not made until some time after the execution of the assignment.  The allegation as to time of the discovery should, no doubt, have been stated more definitely, but, after a careful consideration of all of the alleged facts, we do not feel warranted in holding that the demurrer should be sustained on the ground of laches.

The true names of the appellant's attorney in New York and of the attorney of the defendant formerly employed in the City of Baltimore are not given in the bill, being designated therein by the fictitious names of "Brown" and "Jones" respectively.  Why they were so called is not shown by the bill, but whatever may have been the reason therefor, it is a practice that should not be sanctioned.  As this was not made a ground of the demurrer or definitely objected to by the appellant, we will not for such reason hold that the demurrer should have been sustained.

As we find no reversible error in the ruling of the court upon the demurrer, we will affirm the order appealed from.

> *Order affirmed with costs, and the case remanded for further proceedings.*

OFFUTT, J., concurs in the conclusion in this case, but dissents from so much of the opinion as holds the bill demurrable for its failure to disclose the names of certain persons not parties charged with fraud.