FALLER *v.* FALLER, ET AL.

[No. 536, September Term, 1966.]

632

*Decided October 13, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.,
and RUTLEDGE, J., Associate Judge of the Fourth Judicial Cir-
cuit, specially assigned.

*Leonard T. Kardy,* with whom were *Kardy, Brannan & Neu-
mann* on the brief, for appellant.

*John I. Heise, Jr.* for appellees.

Horney, J., delivered the opinion of the Court.

This case concerns the validity and effect of a separation agreement and a release of dower executed by Charles S. Faller as husband and Olive B. Faller as wife. The principal question presented by the appeal is whether the surviving widow is barred from claiming a dower in the lands and a share of the personal estate of her deceased husband.

The agreement and release were made on May 19, 1961. The husband died on June 8, 1965 leaving a last will and testament in which he made no provision for his wife. Under the terms of the agreement, the husband and his wife agreed to convey to a son (Charles S. Jr.) two parcels of land and subsequently did so. Among other things, the husband promised to pay, without interest, two promissory notes given by him to his wife upon demand after the expiration of two years from the date of the agreement; to maintain memberships in two country clubs with golfing privileges for his wife so long as the clubs would permit her to play golf on his membership; to furnish his wife with an automobile to be replaced "every several years" as the need should arise and to pay the insurance premiums thereon; to pay, during the joint lives of the parties, $242 per week for the support and maintenance of his wife during marriage and, in the event of a divorce, $18,000 annually in semi-monthly payments, as alimony; and, lastly, to keep and maintain the "present life insurance policy on his life in the amount of $60,000" in which the wife was named as beneficiary. The information as to the amount of the policy and the name of the beneficiary was given by the wife to the attorney and mutual friend of the parties who prepared the agreement and the husband signed it without contesting the correctness of the provision. There was no such policy and none was ever procured. At the time the agreement was made, however, the husband had several life insurance policies in force having a total face value of $57,500, all were payable to his estate, and one was encumbered in the amount of $30,000. But at the time of his death the face value of the policies plus accrued dividends amounted to $67,261.78. The encumbrance having

been paid out of the estate, $9,550.54 of the proceeds was paid to the widow and the balance of $57,711.24 is held subject to an order of disposition. The wife, in consideration of the promises made by the husband, executed a release of all dower and marital rights in the real and personal property of the husband.

About a year later, when disagreements arose between the parties with respect to the separation agreement, the attorney who had drawn the separation agreement declined to represent either of them, and each then employed separate counsel.[1] In September 1962, the attorney for the wife, besides prematurely requiring payment of the demand notes, asked the husband to purchase a new automobile for his wife in accordance with the agreement and requested proof that a $60,000 life insurance policy was in full force and effect and unencumbered. In due time, the husband, through his attorney, informed the attorney for the wife that he was ready and willing to (and apparently did) pay the notes when his wife endorsed the checks he had received as a refund of the overpayment of income taxes and that he was willing to comply with his agreement to replace the automobile. As to the insurance policy, the wife's attorney was informed that the husband was willing to give whatever assurance might be required that the insurance was in effect and that the name of the wife would not be changed as the beneficiary. At the same time, however, her attorney was further informed that there was no agreement that the "policy would be unencumbered" and that she knew it was encumbered when it was issued "and understood that it would remain that way indefinitely." Although the facts are in dispute as to whether or not the wife had such knowledge at the time the separation agreement was executed, it is clear that she thereafter made no effort to compel her husband to comply with what she understood the agreement to be.

In January 1963, the wife filed suit for divorce and requested that the separation agreement be incorporated in the decree. The court entered a *pendente lite* order directing the husband to

---

1. Almost invariably, as this case demonstrates, it is unwise for an attorney, even in the best of faith, as was the case here, to undertake to represent both a husband and wife or both parties in any other case.

pay his wife $375 per week as alimony.[2] The suit was dismissed in April 1964 for lack of prosecution, but the husband continued to pay the weekly sum specified in the order of court until he died in June 1965. The subsequent efforts of the respective attorneys to negotiate a revision of the separation agreement were not successful. A draft was eventually prepared but was never signed.

While the husband made no provision for the wife in his will, he expressly stated that the separation agreement should be given effect. When, however, the will was filed for probate, the wife as surviving spouse claimed "dower in lands" and a "legal share of the personal estate" of her deceased husband in lieu of all other rights. Contrarily, the executors, in response to the election of dower, asserted that the widow was precluded from claiming either dower or a share of the personal estate, and subsequently filed a bill in equity for a declaratory decree as to the claimed rights of the widow in the estate of her deceased husband.

Although the chancellor found that the husband allowed one of the country club memberships to terminate in 1963, failed to pay the insurance premiums on the automobile[3] after 1963, and disregarded the promise to obtain a single unencumbered $60,000 insurance policy payable to his wife as beneficiary, he nevertheless concluded, *one*, that even if such misrepresentation or concealment as existed was fraudulent, it was not material to the essence of the agreement (the purpose of which was to provide for the support and maintenance of the wife) and was therefore not actionable; and, *two*, that such breaches and nonperformances as had occurred were not substantial enough to warrant rescission and that there had been no rescission in fact as the result of the negotiations for a revised agree-

**2.** Apparently the sum of $375 is the pro rata amount of the agreed $18,000 annual sum to be paid in semi-monthly payments in the event of a divorce.

**3.** As to the automobile, the chancellor found that the husband had not breached the promise to replace the automobile because there was no evidence to show that the demand of the wife for a new one was in conformance with the phrase "as the need shall arise."

ment. The chancellor cited no authority for the first conclusion, but see *McAleer v. Horsey*, 35 Md. 439 (1872), where it was held that in order to avoid a contract on the ground of fraud, it must be material. See also *Gittings v. Von Dorn*, 136 Md. 10, 16, 109 Atl. 553, 555 (1920) and *Continental Casualty Co. v. Pfeifer*, 246 Md. 628, 229 A. 2d 422 (1967). In support of the second conclusion, the chancellor cited *Vincent v. Palmer*, 179 Md. 365, 19 A. 2d 183 (1941), where it was said (at p. 373) that the "acts relied upon must be unequivocal and inconsistent with the existence of the contract, and the evidence must be clear and convincing." And see *City of Baltimore v. Industrial Electronics*, 230 Md. 224, 229, 186 A. 2d 469, 472 (1962), also cited by the chancellor.

The order of the chancellor had the effect of declaring that the separation agreement was valid and that the execution of the release of dower by the wife had the effect of waiving all rights to elect to claim dower and a share of the personal estate of her deceased husband.

On appeal, the widow, claiming that misrepresentation or concealment rendered the separation agreement invalid and that her husband breached the agreement by nonperformance of its terms, contends that she is entitled to maintenance and support for life. We do not agree. On the contrary, we think the chancellor properly decided the case. But there is a more compelling reason for affirming the decree, for even if a contract, including a separation agreement, is induced by fraud, the deception may be waived. See *Hagan v. Dundore*, 187 Md. 430, 50 A. 2d 570 (1947); *Hoffman v. Seth*, 207 Md. 234, 114 A. 2d 58 (1955); 24 Am. Jur. 2d, *Divorce and Separation*, § 897; 17 C.J.S. *Contracts*, § 165. *Cf. National Guild Ins. Co. v. Johns*, 247 Md. 27, 230 A. 2d 86 (1967). When a party to a contract discovers that fraud has been perpetrated upon him, he must promptly elect to rescind or ratify it. *Wolin v. Zenith Homes*, 219 Md. 242, 146 A. 2d 197 (1959), *cert. den.* 361 U. S. 831 (1959) and cases and texts cited; *Horning v. Ferguson*, 52 A. 2d 116 (D. C. Mun. App. 1947).

Separation agreements are valid, *Grossman v. Grossman*, 234 Md. 139, 198 A. 2d 260 (1964), and may be specifically enforced, *Zouck v. Zouck*, 204 Md. 285, 104 A. 2d 573 (1954).

When therefore the wife discovered the true facts with respect to the insurance policy, it was incumbent upon her to promptly assert her rights. In *Hughes v. Leonard,* 181 Pac. 200 (Col. 1919), wherein, under facts similar to those in the instant case, the wife was held to have been estopped to set aside a separation agreement, it was said, at pp. 203, 204:

> "* * * No express ratification is necessary. Any act of recognition of the contract (retaining the fruits of it through many years) has the effect of an election to affirm. Acts of dominion exercised over the property received under the contract 'after knowledge of the ground of rescission' amount to a ratification. * * *.
>
> * * *
>
> "One who, knowing his rights, takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state if the rights be then enforced, is estopped by the doctrine of laches from assertion of the rights.
>
> * * *
>
> "* * * [P]laintiff's whole claim to a recovery is based upon an alleged fraud perpetrated on her by her husband. A well-settled rule of law required her, in such case, to take proper steps to set aside her contract within a reasonable time after the fact of the fraud became known to her."

Since waiver and estoppel have the same effect in cases concerning a separation agreement as they do in other cases, the question is in the end factual and a decision necessarily depends on the particular circumstances of each case. For example, in *Page v. Woodson,* 200 S. W. 2d 768 (Ark. 1947), wherein the wife waited more than three months after a divorce decree and property settlement (which she claimed to have accepted under duress) and for a week following the death of her husband before seeking to set the settlement aside, it was held that she was estopped.

The case of *Taylor v. Whitehurst,* 151 Md. 621, 135 Atl. 428 (1926), relied on by the wife to support the claim that she

had performed everything required of her under the agreement, is distinguishable on the facts. There the husband, unlike the situation here, was clearly guilty of fraud and the only question was whether the wife had to offer to return the money received by her as consideration for the release of her claims as the alleged widow of the decedent before seeking to rescind the release and it was held that she did not. In the case at bar, however, the wife not only accepted the benefits of the separation agreement but consistently treated the contract as an existing one until after the death of her husband.

The principle of waiver also applies to the breach of a contract. See *John B. Robeson Associates v. Gardens of Faith,* 226 Md. 215, 172 A. 2d 529 (1961) ; *National School Studios v. Mealey,* 211 Md. 116, 126 A. 2d 588 (1956) ; *Miller v. Mantik,* 116 Md. 279, 81 Atl. 797 (1911).

Since there was no proffer of what the attorney who drew the separation agreement would have said had he been allowed to testify at the hearing of this case, we need not consider whether or not statements made to the witness by the deceased were admissible in evidence.

Finally, what was said in *Vincent v. Palmer, supra,* at p. 372 (of 179 Md.) is appropriate here—

> "It is obvious that a party to a contract has no right to abrogate or modify it merely because he finds, in the light of changed conditions, that he made a bad deal. No court should undertake to redraft a contract merely because one of the parties has become dissatisfied with its provisions."

> *Decree affirmed; appellees to pay the costs.*