**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM J. GILBERT,
Plaintiff-Appellant,

v.

BALTIMORE COUNTY, MARYLAND;

No. 00-1395

BALTIMORE COUNTY FIRE
DEPARTMENT; JOHN HOHMAN; JOHN F.
O'NEILL, Chief,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-3384-S)

Submitted: August 15, 2000

Decided: September 28, 2000

Before LUTTIG and MOTZ, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Jack L.B. Gohn, GOHN, HANKEY & STICHEL, L.L.P., Towson,
Maryland, for Appellant. Virginia Wood Barnhart, County Attorney,
James J. Nolan, Jr., Assistant County Attorney, Towson, Maryland,
for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

William J. Gilbert appeals the district court's order granting summary judgment to the Defendants on some claims and dismissing the remaining claims. We affirm.

Gilbert is a firefighter with the Baltimore County Fire Department (the "Department"). On February 10, 1997, Gilbert's supervisor, John Hohman, ordered Gilbert to answer questions as part of an internal investigation. When Gilbert refused, Hohman suspended him and requested that his superior file "Charges and Specifications" against Gilbert recommending his termination for the failure to obey a direct order.

Gilbert planned to file grievances contesting both the suspension and the proposed termination. However, on February 24, 1997, Hohman advised Gilbert that during the pendency of the proceedings, which would be approximately thirty days, Gilbert's search and rescue dog "Mattie" would be reassigned to work with another firefighter. Gilbert stated that Mattie probably would not search properly for another handler. Hohman replied that if Mattie failed to search, she would be useless to the Department and would be destroyed.* Gilbert believed this to be a threat against Mattie's life.

Gilbert thereafter permitted his union representative to negotiate a settlement with the Department that would allow Gilbert to keep his job and prohibit the Department from destroying Mattie. After several

_____

*Hohman denies making this statement or having any conversation at all with Gilbert between February 10 and February 24, 1997. (JA 35). For purposes of appellate review, however, we have assumed that truth of the version of events proffered by Gilbert. See Scheduled Airline Traffic Offices, Inc. v. Objective, Inc., 180 F.3d 583, 591 (4th Cir. 1999).

2

drafts, Gilbert executed a Memorandum of Settlement toward the end of the day on February 24, 1997. The agreement stated that "the settlement provisions [are] entered into voluntarily" and constitute a "full and complete settlement of the charges and specifications against Lieutenant William J. Gilbert." The terms of the agreement provided for Gilbert's demotion and transfer rather than his termination, required Gilbert to write letters of apology, and required Gilbert to forfeit his grievances on leave and compensatory time issues. The agreement also provided for Gilbert's resignation from the search and rescue team. The Department agreed to retire Mattie to the care of Gilbert and agreed to provide her veterinary care.

Gilbert alleges that he subsequently attempted to overturn the settlement agreement through negotiations until November of 1999. At that time, Gilbert filed the instant § 1983 suit alleging that Baltimore County, the Baltimore County Fire Department, and two fire department officials interfered with his constitutional rights. The Defendants moved for summary judgment on a number of grounds, and Gilbert filed a response in opposition. The district court granted summary judgment, finding that the settlement agreement barred most of the federal claims and dismissing the remainder as barred by limitations. The court then dismissed the state law claims for lack of jurisdiction. Gilbert timely appeals.

This Court reviews de novo a district court's order granting summary judgment and views the facts in the light most favorable to the nonmoving party. See Scheduled Airlines Traffic Offices, Inc. v. Objective, Inc., 180 F.3d 583, 590-91 (4th Cir. 1999). Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). Once the moving party discharges its burden by showing that there is an absence of evidence to support the nonmoving party's case, see Celotex Corp. v. Catrett , 477 U.S. 317, 325 (1986), the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Summary judgment will be granted unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

3

Maryland courts have employed several tests to determine whether an agreement is voidable for duress. Courts initially inquired as to whether the complaining party's execution of the document was "induced by harshness and threats, and the exercise of unwarrantable authority, so excessive as to subjugate and control the freedom of (the signatory's) will." Central Bank v. Copeland , 18 Md. 305, 319 (1862). In conjunction with the Restatement (First) of Contracts, Copeland established two elements of duress: (1) a wrongful act or threat by the other party; and (2) the complaining party was overwhelmed by fear and precluded from using free will or judgment. See Food Fair Stores v. Joy, 283 Md. 205, 217 (1978). To be "wrongful," the threat need not be illegal. See Eckstein v. Eckstein, 38 Md. App. 506, 515 (1978). However, for a lawful threat to be wrongful, the means must be used so oppressively as to constitute an abuse of legal remedies. See Food Fair Stores, 283 Md. at 217. Traditionally, courts focused on the effect of the threat on the signatory more so than on the wrongfulness element. See id. at 218.

The Restatement (Second) of Contracts, however, shifted the focus to the nature of the threat itself, omitting the requirement of overwhelming fear. See Restatement (Second) of Contracts § 175 cmt. b (1981). Under the Restatement (Second), a contract is voidable if a party is induced by an improper threat that leaves him no reasonable alternative. See Restatement (Second) of Contracts § 175(1) (1981). "A threat, even if improper, does not amount to duress if the victim has a reasonable alternative to succumbing and fails to take advantage of it." Restatement (Second) of Contracts§ 175 cmt. b (1981). The Restatement further states:

> A threat is improper if the resulting exchange is not on fair terms, and
>
> a. the threatened act would harm the recipient and would not significantly benefit the party making the threat;
>
> b. the effectiveness of the threat . . . is significantly increased by prior unfair dealing by the party making the threat; or
>
> c. what is threatened is otherwise a use of power for illegitimate means.

4

Restatement (Second) of Contracts § 176(2) (1981).

The Food Fair Stores court identified the two possible tests for duress, but did not explicitly decide which test constituted Maryland law. Rather the court applied both tests and found that the claim of duress in that case failed under both. Lower courts, including the district court in the instant case, have continued to address duress claims under the two-element test developed from Copeland and the First Restatement. See Meredith v. Talbot County, 80 Md. App. 174, 183 (1989); Blum v. Blum, 59 Md. App. 584, 594 (1984). Gilbert argues on appeal that the Second Restatement governs Maryland law on the issue of duress. We need not decide which test is actually the law as Gilbert fails to establish duress under either the First Restatement approach or the Second Restatement approach.

Under the two-element test applied in Copeland and Meredith, Gilbert must establish that his supervisor's threat was wrongful and that Gilbert was overwhelmed with fear and unable to exercise his own judgment when he executed the settlement agreement. Several facts indicate that Gilbert was not actually overwhelmed with fear. First, although Gilbert's affidavit states that he would not have signed the agreement if Mattie's life had not been threatened, Gilbert makes it clear that his goal in executing the settlement agreement was not only to save Mattie but also to save his own job. Gilbert's affidavit suggests he would not have signed an agreement if it would result in his termination, which in turn suggests he was not so overwhelmed with fear that he was unable to exercise his free will. Second, Gilbert's own union representative negotiated and drafted the agreement. Third, there was no actual threat of immediate harm to the dog, only mere speculation that she might be harmed if she refused to perform for another handler. And finally, Gilbert's affidavit demonstrates that he knew a decision to destroy a search dog would be the subject of "high-level discussions in the Department." In light of this knowledge, it seems unlikely that Gilbert believed Hohman possessed the unilateral authority to destroy Mattie. Thus, even assuming that Hohman's threat was wrongful, Gilbert fails to satisfy the second element of duress under Copeland and Meredith .

Under the Second Restatement's approach, Gilbert must show that there was an improper threat that left Gilbert no reasonable alternative

5

but to execute the settlement agreement. Even assuming that Hohman's statement was a wrongful exercise of power, Gilbert fails to establish that the settlement agreement prepared by Gilbert's union representative was not on fair terms such that the threat was improper under the Second Restatement. Under the terms of the settlement agreement, Gilbert was demoted and transferred rather than terminated, Gilbert was permitted to keep his dog as a pet and the county agreed to provide free veterinary care, and Gilbert agreed to drop his prior grievances against the department. The terms provide at least some benefit to both parties and cannot be deemed unfair.

Furthermore, even if the threat was improper, Gilbert fails to show that he had no reasonable alternative but to execute the settlement agreement. Hohman's alleged threat was merely a conditional statement that if the dog would not search with another handler, she would be useless to the Department and destroyed. Clearly, Gilbert could have declined to execute the settlement agreement and waited to see if the dog would in fact refuse to search with another handler. Moreover, Gilbert may have been able to pursue a legal remedy to prevent Hohman from killing the dog. Thus, Gilbert fails to establish duress under the Second Restatement.

We find no reversible error and affirm the order of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6