# DIANE M. BELL *v.* STANLEY A. BELL

[No. 92, September Term, 1977.]

*Decided November 10, 1977.*

The cause was argued before THOMPSON, MELVIN and WILNER, JJ.

*William C. Miller,* with whom were *James Robert Miller, Harvey B. Steinberg* and *Miller, Miller & Steinberg* on the brief, for appellant.

*William Blanton McDonald* for appellee.

THOMPSON, J., delivered the opinion of the Court.

Diane M. Bell, the appellant, appeals from an order from the Circuit Court for Montgomery County which dismissed her bill of complaint for cancellation of a separation and property settlement agreement between her and her husband, Stanley A. Bell, the appellee, and the cancellation of eleven deeds executed pursuant to that agreement. She raises three questions on appeal: (1) was the chancellor's decision clearly erroneous when he found that the agreement and deeds were not obtained by duress or undue influence, (2) was there an error in the admission of evidence, and (3) was the chancellor clearly erroneous in finding that the appellant ratified the agreement and the deeds.

The facts that gave rise to this suit are as follows. Diane Bell consulted an attorney in July of 1975, concerning the preparation of a separation agreement. The agreement was prepared and Mrs. Bell presented it to Mr. Bell at home on the morning of August 27, 1975. After examining the agreement at his place of business Mr. Bell inserted several changes and gave it to his secretary for retyping. Two

significant changes were made in the agreement. The original provided for child support in the amount of $700 per month. This figure in the amended agreement was reduced to $300. Mr. Bell's agreement also provided for the disposition of the eleven houses owned by the parties as tenants by the entireties. Under his agreement Mrs. Bell was to receive one of the houses while he retained the other ten. After his agreement was completed he telephoned the appellant and asked her to come to his office in Wheaton to sign the agreement. At that time no mention was made of the changes.

When Mrs. Bell arrived, Mr. Bell suggested that they go to the nearby offices of Ralph Duane Real Estate Co. so that they could discuss the agreement in private. Prior to Mrs. Bell's arrival Mr. Bell had prepared a series of sixteen 3 x 5 cards containing phrases such as "the man," "the kids," "his carrer," "your name," and "Ingrid (accessory)." During the course of the meeting he used these cards to inform the appellant of an investigation of her activities by private detectives and his knowledge of her adulterous affair with a police lieutenant. He also informed her that he knew that many of the contacts occurred at the apartment of her friend, Ingrid Gibson. He then presented his version of the separation agreement and made it clear that unless she signed it he would reveal her relationship to the Internal Affairs section of the police department and to the newspapers. Several times during the course of the conversation Mrs. Bell threatened to leave or requested an opportunity to consult with her attorney, but on each occasion, Mr. Bell threatened to "start the ball rolling" if such attempts were made before the agreement was signed. Mr. Bell placed a tape recorder in the office and recorded the entire conversation without the knowledge of Mrs. Bell. The tape was introduced into evidence.

After Mrs. Bell registered several protests, she read through the agreement and negotiated with Mr. Bell to make several changes. Among these changes was the receipt of a total of $15,000 in cash in addition to the one house. Under the agreement that was signed Mr. Bell received

approximately $163,000 worth of property that was previously owned as tenants by the entireties while Mrs. Bell settled for approximately $45,000 in cash and property.[1]

The appellant argues that a confidential relationship existed between the parties and the burden was on the appellee to show the agreement was fair in all respects. In order to establish a confidential relationship one must show that by virtue of the relationship between them, he is justified in assuming the other party will not act in a manner inconsistent with his welfare. Unlike many jurisdictions, Maryland does not presume the existence of a confidential relationship in transactions between husband and wife. *Owings v. Currier*, 186 Md. 590, 47 A. 2d 743 (1946). In Maryland there has been a presumption that the husband is the dominant figure in the marriage. In *Manos v. Papachrist*, 199 Md. 257, 262, 86 A. 2d 474 (1951), the Court noted:

> "Ordinarily the relationship of husband and wife is a confidential one. Of course, in any given case it is a question of fact whether the marital relationship is such as to give the husband dominance over his wife or to put him in a position where words of persuasion have undue weight. Generally, however, on account of the natural dominance of the husband over the wife, and the confidence and trust usually incident to their marriage, a court of equity will investigate a gift from a wife to her husband with utmost care, especially where it strips her of all her property; and the burden of proof is on the husband to show that there was no abuse of confidence, but that the gift was fair in all respects, was fully understood, and was not induced by fraud or undue influence."

We noted the questionable foundation upon which this presumption rests in light of Article 46 of the Maryland Declaration of Rights, better known as the Equal Rights

---

1. The property Mr. Bell received had a gross value of $597,000 but was subject to mortgages totalling $434,339.

Amendment, in *Trupp v. Wolff,* 24 Md. App. 588, n. 15, 335 A. 2d 171 (1975), *cert. denied,* 275 Md. 757. Since that decision, the Court of Appeals has held that sex classifications are no longer permissible under the amendment. *Rand v. Rand,* 280 Md. 508, 374 A. 2d 900 (1977). Consequently, the presumption of dominance cannot stand.

When the presumption is disregarded the question of whether a confidential relationship exists between husband and wife becomes a question of fact. Among the various factors to be considered in determining whether a confidential relationship exists are the age, mental condition, education, business experience, state of health, and degree of dependence of the spouse in question. *Treffinger v. Sterling,* 269 Md. 356, 305 A. 2d 829 (1973); *Hoffman v. Rickell,* 191 Md. 591, 62 A. 2d 597 (1948); *Gaggers v. Gibson,* 180 Md. 609, 26 A. 2d 395 (1942); *Gaver v. Gaver,* 176 Md. 171, 4 A. 2d 132 (1939).

The testimony shows that Mrs. Bell was born in Europe, moved to this country when she was eleven years old, and left school at the age of fifteen. Although she is employed as a beautician, she has relatively little experience or expertise in business matters. On the other hand, Mr. Bell is an experienced businessman, possesses a real estate license, and has a college degree. The chancellor considered these facts, but found that no confidential relationship existed primarily because Mrs. Bell negotiated several changes in the agreement and questioned other provisions, as is clearly shown by the tape recording. He found there was a lack of trust and confidence in the other party necessary to the establishment of a confidential relationship. We are unable to say his decision on this issue was clearly erroneous. Md. Rule 1086.

Absent proof of a confidential relationship between the parties, separation agreements, not disclosing any injustice or inequity on their face, are presumptively valid and the burden is on the party challenging the agreement to show its execution resulted from coercion, fraud, or mistake. *Cronin v. Hebditch,* 195 Md. 607, 74 A. 2d 50 (1950); *Owings v.*

*Currier, supra; Jackson v. Jackson,* 14 Md. App. 263, 286 A. 2d 778 (1972).

The only inequity claimed by the appellant is that she relinquished her one half interest in approximately $210,000 worth of real estate for approximately $45,000 in property and cash. This disparity in consideration is not sufficient to show that the agreement was unjust or inequitable. The cases which have found agreements to be unjust or inequitable on their face involved agreements that were completely lacking in any reasonable consideration. *Cronin v. Hebditch, supra; Eaton v. Eaton,* 34 Md. App. 157, 366 A. 2d 121 (1976). In *Cronin* the wife signed an agreement releasing all her rights in property totalling more than $700,000 for a mere $10,000 and the Court of Appeals voided the agreement. More recently, in *Eaton* we struck down an agreement in which rights in $200,000 to $250,000 worth of property were released for $4,300. There we said:

> " '[The] defendant in this case has ostensibly purchased far more cheaply than a Court of Equity can condone all of the plaintiff's rights "of whatsoever kind or nature originating in and growing out of the marriage status." ' " 34 Md. App. at 162.

As we are unable to say the agreement in question was lacking in any reasonable consideration, *Cronin* and *Eaton* cannot be used to relieve the appellant from proving the agreement was the product of duress or undue influence.[2]

---

2. We are aware that some cases in other jurisdictions have created a presumption of invalidity where the consideration given is grossly disproportionate to the consideration received or is otherwise unfair. *See* Le Bert-Francis v. Le Bert-Francis, 194 A. 2d 662 (D.C. 1963) (where separation agreement is unfair it is presumed to be invalid and the burden is on the party seeking to enforce it to prove otherwise); Demaggio v. Demaggio, 317 So. 2d 848 (Fla. App. 1975) (presumption of fraud created where agreement was grossly disproportionate, husband concealed assets, and wife was unrepresented by counsel); Davis v. Davis, 24 Ohio Misc. 17, 258 N.E.2d 277 (1970) (where provisions are disproportionate burden is on party seeking to uphold agreement to show there was full disclosure and the agreement was signed voluntarily).

In the absence of a confidential relationship, we see no reason to shift the burden of proof because the parties were husband and wife and one of them made a bargain which now seems unfair, but is not grossly unfair.

16

The appellant's claim of duress or undue influence rests on the threats of Stanley Bell to notify the Internal Affairs section of the Police Department and the newspapers of her adulterous relationship unless the agreement was signed. Mr. Bell also stated that such disclosures would ruin the career of her lover and Ingrid Gibson, as well as her reputation in the community. The chancellor construed these statements as being no more than a threat to institute a divorce action on the grounds of adultery.

In order to establish duress there must be a wrongful act which deprives a person of the exercise of his free will. *See Central Bank v. Copeland,* 18 Md. 305 (1862); *Restatement* (Second) *of Contracts* § 316-318 (Tent. Draft No. 12, 1977); 13 *Williston on Contracts,* §§ 1606-1607 (3d ed., W. Jaeger ed. 1970). Although we have found no Maryland case discussing the issue whether a threat to institute a civil suit can furnish a legally sufficient basis for duress, the question has been considered by a number of courts in other jurisdictions. Under these cases such suits do not form a legally sufficient basis for duress where the threat to institute the suit is made in good faith. *Jack Winter, Inc. v. Koratron Co.,* 329 F. Supp. 211 (N.D. Calif. 1971); *Blalock v. Blalock,* 51 Ala. App. 686, 288 So. 2d 747 (1974); *Dunbar v. Dunbar,* 102 Ariz. 352, 429 P. 2d 949 (1967); *Del Carlo v. County of Sonoma,* 245 Cal. App.2d 36 53 Cal. Rptr. 771 (1966); *Kaplan v. Kaplan,* 25 Ill. 2d 181, 182 N.E.2d 706 (1962); *Eggleston v. Humble Pipe Line Co.,* 482 S.W.2d 909 (Tex. Civ. App. 1972). The courts have stated the assertion of a claim with the knowledge there is no reasonable belief of success or that it is false, amounts to bad faith and is a sufficient basis for a claim of duress. *Jack Winter, Inc. v. Koratron Co., supra; Kaplan v. Kaplan, supra; Louisville Title Insurance Co. v. Surety Title & Guaranty Co.,* 60 Cal. App.3d 781, 132 Cal. Rptr. 63 (1976). Even though a particular act is legal, if it is wrongful in the moral sense a number of authorities have held that it can be used to establish a claim of duress. *Fowler v. Mumford,* 48 Del. 282, 102 A. 2d 535 (1954); *Kaplan v. Kaplan, supra; Hochman v. Zigler's, Incorporated,* 139 N. J. Eq. 139, 50 A. 2d 97 (1946);

*Link v. Link,* 278 N. C. 181, 179 S.E.2d 697 (1971); *Restatement* (Second) *of Contracts* § 318 (Tent. Draft No. 12, 1977); 13 *Williston on Contracts,* §§ 1606-1607 (3d ed. W. Jaeger ed. 1970).

The appellant argues that a threatened civil suit can be wrongful in a moral sense where it is used to coerce a settlement in a transaction unrelated to the subject matter of the suit. In support of this argument she relies on *Link v. Link, supra.* In *Link* the husband threatened to institute divorce proceedings against the wife and seek custody of their children unless the wife signed an agreement transferring her individual property to the husband. In deciding the case the Court noted that the general rule that threats to institute civil proceedings are not wrongful but went on to state:

> "The law with reference to duress has, however, undergone an evolution favorable to the victim of oppressive action or threats. The weight of modern authority supports the rule, which we here adopt, that the act done or threatened may be wrongful even though not unlawful, per se; and that the threat to institute legal proceedings, criminal or civil, which might be justifiable, per se, becomes wrongful, within the meaning of this rule, if made with the corrupt intent to coerce a transaction grossly unfair to the victim and not related to the subject of such proceedings." 179 S.E.2d at 705.

*See Restatement* (Second) *of Contracts* § 318 (Tent. Draft No. 12, 1977); 13 *Williston on Contracts* §§ 1606-1607 (3d ed. W. Jaeger ed. 1970).

We find the reasoning of *Link* to be persuasive. Applying this approach to the case before us we think there was a legally sufficient basis for a finding of duress.

Mr. Bell threatened an action for divorce on the grounds of adultery to force a property settlement between the parties. Although the threatened action and the separation agreement both relate to the marital status of the parties, their substance is significantly different. A court in an

action for divorce does not have jurisdiction to settle the property rights of the parties to real estate. *Md. Code,* Courts and Judicial Proceedings Article § 3-603; *Flage v. Flage,* 35 Md. App. 619, 371 A. 2d 729 (1977). Mr. Bell's threats of a civil suit for divorce were unrelated to the dispute over the property and were made to obtain Mrs. Bell's signature on an agreement.

Even though the chancellor concluded that there was no wrongful conduct he went on to note in his opinion that even if the actions were considered wrongful, they did not deprive Mrs. Bell of her free will, citing *Treffinger v. Sterling, supra.* In support of this finding he noted that Mrs. Bell actively negotiated with Mr. Bell concerning various provisions in the agreement. At one point in the conversation she stated:

> "Umn, I'm just trying to get you know as much as I can which is, you have to admit, you'd do the same thing."

Although there was testimony that Mrs. Bell was extremely upset after the agreement was signed, there was other testimony to the contrary. The chancellor considered this evidence and concluded:

> "[T]he negotiations and the tenor of the parties' meeting indicate quite clearly that the Plaintiff, in order to avoid an embarrassing incident involving her and close friends, freely and voluntarily negotiated with her husband."

The question of whether Mrs. Bell was deprived of her free will was one of fact and as there is ample evidence to support this finding, we are unable to say it was clearly erroneous. Md. Rule 1086. In other words, there is no rule of law that precludes a woman from giving away a substantial portion of her property to save her reputation, if it is her voluntary act. Although on the evidence we may have found the act involuntary, we must accept the chancellor's findings because of his superior position to make this subtle distinction.

The appellant also argues the chancellor erred in excluding the testimony of Ingrid Gibson as to what Mrs. Bell told her immediately after the transaction in question. The record shows that after the deeds and the agreement were signed at a nearby notary's office, both parties returned to the appellee's place of business about an eighth of a mile away. There the appellee wrote a check to the appellant for $15,000 and they discussed arrangements for dinner that evening. The appellant left and telephoned her friend, Ingrid. After the conversation, the appellant drove five or ten minutes to meet her at Roy Rogers Restaurant. Mrs. Bell testified that at the time of the conversation she was scared. Ingrid Gibson testified as follows:

"Q. About how long was it from the time of the phone call until you met at Roy Rogers?

A. I would say about five or ten minutes.

Q. When you saw Mrs. Bell did you notice anything unusual about her physical appearance?

A. Yes, I did.

Q. What was that?

A. She was crying, she was visibly upset. She was shaking and she had a very difficult time explaining to me what was wrong.

Q. Did you have some conversation with her at Roy Rogers?

A. Yes, I did.

Q. Could you relate what she told you in reference to what happened to her earlier in the day?

Mr. McDanald: Objection.

[Sustained]."

The appellant argues that the statement was admissible as part of a spontaneous declaration citing *Patterson v. B. & O. R.R. Co.*, 133 Md. 276, 280, 105 A. 159 (1918), and 6 *Wigmore on Evidence*, § 1750 (Chadbourn Rev. 1976). In order for the statement to be admissible under the

spontaneous declaration exception to the hearsay rule the statement must have been made in response to a startling occurrence and before there has been time for reflection. *Moore v. State*, 26 Md. App. 556, 338 A. 2d 344 (1975), *cert. denied*, 276 Md. 747; *Wigmore, supra.*

In *Moore v. State, supra,* at 566-67, we said:

> "A case such as this illustrates the wisdom of reposing in the trial judge, the man upon the scene, the ultimate discretion as to admissibility. It is he who can best assess the need and can best assess the circumstantial guarantees of trustworthiness. As was stated in McCormick, *Law of Evidence* (1st Edition 1954), at 562:
>
> > '[T]he trial judge has the duty to consider the circumstances under which the declarations were made and to determine (largely in his discretion) whether they were uttered spontaneously or designedly with a view to making evidence.' "

As we have indicated, the chancellor found on the merits that the appellant did not act under duress or undue influence. We have accepted his finding because there was evidence to support it. In like manner we cannot say that he was in error in excluding the evidence. There was evidence to support the finding that she was not under stress at the time she made the statement to Ingrid Gibson.

We do not reach the question of ratification.

*Decree affirmed.*
*Appellant to pay the costs.*