## A. ESTELLE McCLELLAN v. RUSSELL DALE McCLELLAN

[No. 59, September Term, 1982.]

*Decided October 7, 1982.*

The cause was argued before GILBERT, C. J., and MOORE and GARRITY, JJ.

*Ann Fligsten* for appellant.

*Theodore Bloom,* with whom were *Goodman, Bloom & Cohen, P.A.* on the brief, for appellee.

GARRITY, J., delivered the opinion of the Court.

The appellant, A. Estelle McClellan, appeals from a decree of the Circuit Court for Anne Arundel County which granted a divorce *a vinculo matrimonii* to the appellee, Russell Dale McClellan on the grounds of voluntary separation. This decree also awarded custody of two minor children to the appellant, provided for their support, and ordered that an agreement of the parties, dated September 17, 1977 be incorporated into and made a part of the decree.

The appellant presents five questions for our review:

I. Did the court err when it found no undue influence, duress, or dominance by Mr. McClellan in the execution of the agreement?

II. Did the court err when it found no issue of fraud?

III. Was there adequate consideration to support the enforcement of the agreement?

IV. Do the circumstances surrounding the execution of the agreement, and the agreement itself, make it inequitable to enforce and against public policy?

V. Was the court clearly erroneous in granting the appellee a divorce on the grounds of voluntary separation?

For the reasons set forth in this opinion, we answer each of the appellant's questions negatively, and we affirm the judgment of the Circuit Court.

## THE FACTS

A. Estelle McClellan and Russell Dale McClellan were married in Florida on December 24, 1960. Both parties worked for American Can Company in Tampa until Mr. McClellan received a promotion and transfer. Thereafter Mrs. McClellan did not work outside of the family home. The parties and their two sons moved to Maryland in 1975 where Mr. McClellan became a plant manager for American Can Company.[1]

Marital difficulties, which had periodically plagued the couple prior to their move to Maryland, arose again and resulted in the closure of their joint checking accounts in late 1976, and their discussion of possible separation. In July of 1977, Mr. McClellan provided his wife with $2,500.00 as a deposit for the purchase of an ice cream business. The appellee also consulted with counsel concerning a possible separation, and prepared an outline of a separation and marital property settlement agreement. Mrs. McClellan did not retain her own counsel, but she participated with her husband in preparing a draft agreement. The parties signed the document, and Mr. McClellan presented it to his attorney as the basis for a formal agreement.

Appellee's counsel prepared a formal agreement and sent it to his client. Mrs. McClellan first saw a copy of this agreement when Mr. McClellan delivered the copy to her with instructions that she was to find a notary while he was

---

1. By a prior marriage, Mrs. McClellan also has a daughter who in 1981 resided in New Jersey. The record does not reveal whether the appellant has any legal obligations or custody rights towards her daughter which could affect the present case.

on a business trip. She retained this copy during the week of her husband's absence, and following his return, she agreed to sign the agreement. The couple then went to a notary and formalized the agreement on September 17, 1977.

Mr. McClellan left the marital home on or about December 6, 1977. Pursuant to the separation agreement, Mrs. McClellan retained custody of the children and received child support payments. She also exercised her right under the agreement to possess the marital home until the eighteenth birthday of the youngest child. She was provided with a car, mortgage and insurance payments, furniture, and $2,500 from the sale of jointly-titled stock, in addition to the amount previously provided for her business.

Mr. McClellan received a waiver of marital obligations, the remaining savings, stocks, bonds and possessions titled in his name, and ultimate title and possession of the house. He was also obligated to provide each of the children with $25,000.00 upon their graduation from high school, and to leave each child a one-fourth share of his estate as valued from the time of the separation.

After then retaining the services of an attorney for the first time, Mrs. McClellan filed a bill of complaint for divorce *a mensa et thoro,* on October 2, 1980 alleging desertion by Mr. McClellan. He denied the allegation on the basis of the separation agreement and filed a cross-bill of complaint for divorce *a vinculo matrimonii.*

On November 25, 1980, Mrs. McClellan filed an amended bill of complaint for divorce *a vinculo matrimonii* alleging desertion and adultery, and seeking alimony, child custody and support, use and possession of the marital home, and distribution of marital property. She denied the validity of the separation agreement.

Trial was held on September 16, 1981, and subsequently on September 28, 1981, the Circuit Court for Anne Arundel County decreed, *inter alia,* that Mr. McClellan was divorced *a vinculo matrimonii* from Mrs. McClellan, and that the agreement of the parties dated September 17, 1977 be incorporated into and made a part of the decree.

## I. *The Agreement*

In his oral opinion announced at the end of the trial on September 16, 1981, the chancellor stated that:

> The issue as presented by the parties in this case ... is whether or not this agreement is valid. There is no question that the parties to a marriage have a right upon having a dispute within that marriage, and desire to dissolve it, have a right to enter into an agreement that would dispose of the property rights as accrued to each.

The chancellor then announced his findings 1) that negotiations for the agreement were conducted between the parties in their own home, 2) that Mrs. McClellan was intelligent and understood that she signed a separation agreement, 3) that she understood that the agreement divided property rights, 4) that she handled family finances, prepared tax returns and knew her husband's financial status, 5) and that she was not subjected to undue duress when she helped prepare and then signed the agreement.

Based on these factual determinations, the chancellor ruled that the agreement was valid and binding on the parties. In the decree of September 28, 1981, the chancellor specifically found as a matter of fact that

> Said agreement was freely and voluntarily entered into by both parties, and is valid and binding; that there was legally adequate consideration for said agreement; and that said agreement was not the product of fraud, coercion or undue influence.

On appeal, Mrs. McClellan contends that the Circuit Court was "clearly erroneous in its finding that Mrs. McClellan was not dominated by her husband and erred in ignoring the issue of the confidential nature of the relationship". The appellant asserts that the chancellor should have made the factual finding that "her husband was clearly the dominant party during the marriage," and then

placed the burden of proving the validity of the separation agreement on Mr. McClellan.

In our analysis of the appellant's contention, this Court cannot substitute its judgment for that of the chancellor on the findings of fact. We may only determine whether those findings were clearly erroneous in light of the total evidence. *Colburn v. Colburn,* 15 Md. App. 503, 513, 292 A.2d 121 (1972). To rule that a chancellor's findings were clearly erroneous, we must first assume the truth of all the evidence and of all the favorable inferences fairly deducible therefrom tending to support the factual conclusion reached by the chancellor. *Jacober v. High Hill Realty, Inc.,* 22 Md. App. 115, 121, 321 A.2d 838, *cert. denied,* 272 Md. 743 (1974); accord *State v. Rusk,* 289 Md. 230, 245, 424 A.2d 720 (1981).

The chancellor determined that the separation agreement was not the product of duress or undue influence by Mr. McClellan to the detriment of his wife. We hold that as adequate evidence was presented by the parties at trial upon which the chancellor could have based his conclusion, the chancellor's findings were not clearly erroneous.

Testimony presented at the trial reveals some disparity between the education and experience of the two parties. Mr. McClellan is a high school graduate; his wife did not attend high school. He worked as a plant manager earning over $39,000.00 per year; she temporarily operated an ice cream business and received minimal income. These facts do not contradict the chancellor's conclusion that Mrs. McClellan is an intelligent person. Likewise, the testimony that the appellee once threatened to have his wife committed does not justify reversing the chancellor's conclusion that Mrs. McClellan was not forced to sign the agreement, especially in light of the appellant's admission that she responded to her husband by telling him, "What I should do is just blow your brains out".

This Court will invalidate a separation agreement on the basis of duress in its formation, but only when "the conclusion that the execution of the agreement was obtained by duress is inescapable". *Eckstein v. Eckstein,* 38 Md. App.

506, 518, 379 A.2d 757 (1978). In *Eckstein,* we determined that an agreement which provided a mentally-ill wife with $1,100.00, her clothes and a van, in exchange for $30,000.00 to $40,000.00 worth of property rights, had to be invalidated because the wife signed the agreement under an acknowledged threat by her husband that she would never see her children again and receive nothing if she did not sign. From these facts in the record, we held that the appellant in *Eckstein* met her burden of establishing that the agreement was not a product of her free will. *Id.* at 516.

In a case based on less egregious facts, we affirmed a chancellor's determination that a separation agreement was not the product of duress. In *Bell v. Bell,* 38 Md. App. 10, 379 A.2d 419 (1977), *cert. denied,* 282 Md. 729 (1978), we held that the chancellor's ruling was not clearly erroneous when supported by evidence that a wife negotiated an agreement giving her $45,000.00 in cash and property and providing her husband with property worth $163,000.00. We further held that the husband's threats to sue his wife for adultery may have provided a basis for a finding of duress, but we would not say that the chancellor erred in ruling that the wife signed the agreement of her own free will. *Bell, supra* at 17-18.

Also in *Bell, supra* at 13-14, we discussed the concept of a confidential relationship between spouses, the existence of which would shift the burden to the husband to show that the agreement was fair in all respects. In order to establish a confidential relationship, the wife must prove that she justifiably assumed that her husband would only act in a manner consistent with the wife's welfare. Maryland law, especially since the passage of Article 46 of the Maryland Declaration of Rights, also known as the Equal Rights Amendment, does not permit a presumption of such a confidential relationship between spouses. Absent proof of the relationship, a separation agreement is presumed to be valid. *Cronin v. Hebditch,* 195 Md. 607, 74 A.2d 50 (1950).

In the present case, the chancellor did not expressly find the absence of a confidential relationship, but by stating on

the record his finding that Mrs. McClellan fully understood her own actions, that she had participated in negotiating the agreement, and was not subservient to her husband, the chancellor found *a fortiori,* that a confidential relationship did not exist.

The appellant concedes that no Maryland authority requires that both signatories to a separation agreement have separate legal counsel. Mrs. McClellan, however, contends that "without counsel to resist her husband's threats . . . [she] was unable to challenge her husband's will and did not freely and voluntarily execute the agreement". The appellant's conclusion — that she did not act voluntarily — does not necessarily follow from the fact that she lacked independent counsel. Lack of legal representation is not dispositive of the issue of an agreement's validity, but is only one of many factors, including the extent of parties' negotiations and their awareness of each other's assets, which a chancellor considers. *Eaton v. Eaton,* 34 Md. App. 157, 366 A.2d 121 (1976).

In the present case, sufficient evidence was presented to the chancellor concerning the capacity of the parties and the legality of the separation agreement to support the chancellor's ruling that the agreement was freely entered into. *Id. supra* at 163.

## II. *Issue of Fraud*

After the presentation of testimony, the chancellor considered the issue of fraud or duress in the agreement, by announcing in his oral opinion:

> And I think she fully understood what she was doing, did sign it. It's not unconscionable. It's not obtained by duress, *and there's certainly no issue of fraud.* And it's not under any undue influence that she was required to sign it. (emphasis added)

The highlighted comment of the chancellor was not included in the court's written decree, rather the decree stated "that said agreement was not the product of fraud".

On appeal, Mrs. McClellan declines to quote from the chancellor's decree, but quotes the single phrase in her brief, "... no issue of fraud ...," for the proposition that the chancellor failed "to recognize the fraud practiced upon her". The appellant then asserts that the chancellor was clearly erroneous in finding "no issue of fraud".

Because the chancellor's written decree, which is the essential document in this case, acknowledges the existence of an issue of fraud, and with adequate evidence concludes that Mrs. McClellan was not a victim of a fraud, we must affirm the chancellor's determination. *Bell, supra.*

The appellant contends that there was sufficient evidence of Mr. McClellan's improper behavior from which the chancellor should have ruled that the appellee deceived his wife. We cannot hold, however, that the existence of evidence by which the chancellor could have reached a contrary conclusion, necessarily requires reversal of the chancellor's ruling. *Jackson v. Jackson,* 14 Md. App. 263, 269, 286 A.2d 778 (1972).

### III. *Consideration*

In its ruling as to the agreement, the court found that "there was legally adequate consideration".

On appeal, Mrs. McClellan concedes that "no formula has been established to guide the Court in its inquiry of the adequacy of consideration", but she contends that in the present case the "magnitude of the disparity" between the money she obtained from the appellee and the property that her husband retained, compels a finding of inadequate consideration. We disagree.

The testimony presented to the Chancellor reveals that the appellant accepted a lump-sum cash settlement of $5,000.00 in lieu of alimony or support. Because Mr. McClellan sold jointly-held stock in order to provide his wife with this settlement, the actual value of the distribution to Mrs. McClellan was a total of only $2,500.00.

On the other hand, the separation agreement also provided Mrs. McClellan with the use and occupancy of the family house which was appraised at a value of $92,500 as of 1977. The value of this occupancy, minus all utility expenses for which Mrs. McClellan was responsible, could properly have been deemed as part of the consideration for the separation agreement. The agreement also recited that Mrs. McClellan would own all of the household furnishings, except for major appliances, even after Mr. McClellan took possession of the house in 1983.

The separation agreement provided that Mr. McClellan would fulfill his obligation to support his sons by paying $125.00 per month for the support of each child. Additionally, Mr. McClellan, at the insistence of his wife, contracted to maintain savings accounts and securities in his sons' names, and provide at least $25,000.00 to each son at the time of their graduation from high school. Likewise, Mr. McClellan agreed to leave one-fourth of his estate valued at the time of the agreement to each of his sons.

But for the separation agreement, Mr. McClellan would have been neither legally obligated to provide payments to his adult sons, nor would he have been obliged to make them heirs of one-half of his estate. At the trial, however, Mrs. McClellan testified that she discussed with her husband the establishment of a college fund for the children. After she had refused to agree to the appellee's plan for such a fund, she negotiated an arrangement whereby the sons could live at home, if necessary, but have their college paid for by Mr. McClellan. The college fund was established by Mr. McClellan from securities which had been only in his name.

Mr. McClellan's substantial contributions for his sons may also be deemed as part consideration for the separation agreement. As Judge Horney stated in *Queen City Enterprises, Inc. v. Independent Theatres, Inc.,* 230 Md. 387, 392, 187 A.2d 459 (1963):

A benefit to a third person is sufficient consideration for an agreement or promise. It is well

established that the consideration supporting a promise 'may be given to a promisor or to some other person' and it 'may be given by the promisee or by some other person'. *Humbird v. Humbird,* 162 Md. 582, 586, 160 Atl. 623 (1932) . . . .

This principal of contract law was applied in a domestic relations context by the Court of Appeals of New York in *Ferro v. Bologna,* 286 N.E.2d 244 (1972), wherein the Court held that a wife's waiver of rights to her husband's estate constituted valid consideration in a separation agreement for the husband's promise to name his children as beneficiaries under his insurance policy. *Accord, Campbell v. Prudential Insurance Co.,* 137 N.E.2d 515 (Ohio Ct. App. 1955).

Similarly, the Supreme Court of California held in *In re Estate of Vai,* 417 P.2d 161, 168 (Calif. 1966), that even a grossly disproportionate division of property between spouses does not render a settlement agreement void for inadequate consideration, because intangible factors, such as bequests to children, must be weighed in the balance in determining the adequacy of consideration. Mr. McClellan's substantial contributions for his sons may, therefore, also be deemed to constitute part of the consideration for the separation agreement.

We hold that the testimony at trial presented sufficient evidence to support the chancellor's ruling as to the adequacy of consideration. *Frank v. Frank,* 207 Md. 124, 129, 113 A.2d 411 (1955), cited in *Goldberg v. Goldberg,* 290 Md. 204, 212, 428 A.2d 469 (1981).

## IV. *Public Policy*

The first section of the parties' separation agreement provides:

1. *Separation.* The parties agree to separate, and from the date of this agreement, voluntarily to live separate and apart, in separate places of abode,

without any cohabitation. Each party shall and will allow and permit the other to reside and be in such place and places, and in such family and families, and with such relations, friends or other persons, and to follow and carry on such trade or business as either may from time to time choose or think fit, and that each shall not nor will at any time, sue or suffer the other to be sued for living separate and apart from him or her, nor sue, molest, disturb or trouble any person whomsoever for receiving, entertaining, or harboring the other and that neither will interfere with nor molest the other at any time after the execution of this agreement.

In order to encourage both parties to enjoy full and active lives, free to associate with whomever they wish during their separation, without fear that such associations may be misconstrued, each party hereby expressly waives and condones all causes and grounds of divorce now existing or which may hereafter occur, other than the voluntary separation of the parties as evidenced by this agreement, incompatibility, irreconcilable differences, or other non-culpable grounds; and each party hereby covenants not to charge the other with any marital misconduct of any kind in any litigation between them, for divorce or otherwise, based upon any act or association by the other subsequent to the date of their separation.

In her pleadings and testimony at trial, Mrs. McClellan contended that this section of the agreement was inoperative because the parties did not separate and live apart based on a mutual and voluntary agreement to live separate and apart with the intention of terminating their marriage.

Responding to this contention the chancellor, having heard the parties' testimony, found that:

Mrs. McClellan has indicated today on the stand that her idea of what this was, was an agreement to

improve the condition of the marriage. I just cannot find any reasonable way to interpret this agreement in that fashion. I think certainly ... you're talking about a separation agreement.

.... Well, the first case I would have to hear would be the cross-bill alleging voluntary separation, because the first bill, as I understand it, is only alleging desertion, and desertion is wiped out by the agreement. *Adultery would not be wiped out by an agreement,* but desertion would. (Emphasis added)

.... I think certainly the testimony indicates there, that the separation as occurred has continued uninterrupted since December 6, 1977, or over three years.

Based on these findings, that the agreement was a valid separation, that by the agreement the parties had waived the right to sue for desertion, and that an uninterrupted separation had occurred, the chancellor granted an absolute divorce on the grounds of voluntary separation.

On appeal Mrs. McClellan contends that the separation agreement is against public policy and should not have been enforced by the lower court because:

It is not clear that Mr. McClellan actually intended to separate from his wife even upon signing the agreement until she questioned the lifestyle he was leading. He had no grounds to sue his wife for divorce; she did not want the separation; he wanted to limit his liability in the event he decided to move out or divorce his wife.

Although the record of the present case may not reveal the "clear" intentions of the parties, this Court cannot substitute its judgment for that of the chancellor who heard the witnesses and ruled accordingly. *Colburn, supra.* Rather, we hold that the agreement was enforceable as providing for distribution of assets in the event of a future separation. A similar agreement was upheld by this Court in *Frana v. Frana,* 12 Md. App. 273, 279-282, 278 A.2d 94 (1971), in

which the valid agreement provided for separation of the parties *after* the execution of the agreement.

The appellant also contends that the waiver provisions of the separation agreement "make the enforcement of the agreement against public policy". She asserts that the waiver of suit for marital misconduct is so broad as to provide the appellee with "a license to abuse his wife without normal recourse". We disagree and hold that the chancellor was not wrong in enforcing the agreement against the parties.

The chancellor's ruling as to the validity of the agreement, and his enforcement of the agreement, did not and could not cause the horrendous consequences suggested by the appellant. The chancellor did not interpret the waiver provisions as providing a license for spousal abuse, adultery or brutality. Rather, the chancellor stated that by the agreement, the appellant had waived her right to sue for desertion. Such a waiver is valid under Maryland law. *Buchholtz v. Buchholtz*, 232 Md. 374, 378, 194 A.2d 115 (1963). Contrary to the appellant's assertions, the waiver provision in the separation agreement does not create a "license for licentiousness" that would bar a suit for divorce for an adultery committed *prior* to the running of the statutory period of voluntary separation. *Holofcener v. Holofcener*, 242 Md. 727, 729, 219 A.2d 839 (1966). *See* Md. Ann. Code, Article 16, § 28 (1981 Repl. Vol.), which provides that property agreements shall be valid and binding, but may not bar an action for divorce on grounds arising prior or subsequent to the execution of the agreement.

Thus, it is clear that even though the agreement provided for a waiver of marital misconduct, such provision is at complete variance with the public policy of this State and has no effect. As stated in *Holofcener, supra,* at 729:

> [t]he Legislature surely did not intend that an innocent spouse living apart by mutual consent must sit idly by and endure the shame of the other's adulterous conduct until such time as a nonculpatory ground for divorce matures.

Because the marital misconduct provision was determined by the chancellor not to constitute a waiver of the appellant's right to sue for adultery, her argument that the separation agreement should be invalidated because of such provision, is not justiciable on appeal.

## V. *Entitlement to Divorce*

The appellant concedes that the chancellor found "enough proof for a voluntary separation". She contends on appeal, however, that because she "pleaded and proved" that the appellee committed adultery, she is entitled to a divorce on the grounds of adultery. She does not support this contention with reference to any legal authority.

The appellee responds by stating that sufficient evidence was presented to the chancellor on which he could base his award of a divorce on the grounds of voluntary separation. Even if the waiver provision of the agreement had been invalidated by the chancellor, the appellee contends, the chancellor would not have been clearly erroneous in awarding the divorce on grounds of voluntary separation instead of culpable grounds. We agree with the appellee's position.

The Court of Appeals in *Wallace v. Wallace,* 290 Md. 265, 280, 429 A.2d 232 (1981), rejected a husband's argument that his former wife's adultery precluded her from obtaining a divorce on the grounds of voluntary separation. Under the circumstances of this case, we hold that the chancellor's decree cannot be ruled clearly erroneous as the record reveals a sufficient legal basis for the divorce on the grounds of voluntary separation. *Carney v. Carney,* 16 Md. App. 243, 251, 295 A.2d 792 (1972).

> *Judgment affirmed.*
> *Costs to be paid by appellant.*