477 A.2d 289

**Jerome W. BLUM, Jr.**

v.

**Diane M. BLUM.**

**No. 1300, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

July 12, 1984.

586

Thomas Bowie McCarty, Catonsville, for appellant.

Sharon L. Rhodes, Baltimore, with whom was James K. Eagan, III, Columbia, on brief, for appellee.

Argued before MOYLAN, LOWE * and BELL, JJ.

BELL, Judge.

A decree of the Circuit Court for Baltimore County which set aside the separation agreement and granted a monetary award and attorney's fees is the subject of this appeal. The husband, the aggrieved litigant, has raised a number of errors on the part of the chancellor which we summarize:

1.  It was error to set aside the separation agreement and impose a constructive trust based on the factual findings.

2.  The pleadings did not specify the relief afforded.

3.  There was error in determining what property was marital property and in failing to consider and review all the factors as specified in the Property Disposition in Divorce and Annulment Act.

4.  There was error in awarding counsel fees.

## BACKGROUND

Jerome W. Blum, Jr., and Diane M. Blum were married in 1972. They were both high school graduates and held full-time jobs throughout the marriage. Early in the marriage they purchased a home. About three and a half years later, having paid off the mortgage, they sold it at a profit and purchased a larger home for $110,000. They settled on the house with a $65,000 mortgage and the balance in cash. Mr. Blum's parents lent them $25,000, evidenced by a note, which provided the parents could reside on the property for the rest of their lives subject to a number of contingencies. The proceeds of the loan from Mr. Blum's parents were used immediately to reduce the mortgage to $40,000. A unique feature of the house was that while it appeared to be a single family dwelling, it contained two separate self-

---

* Judge Lowe participated in the hearing of the case and the conference thereon, but died before the opinion was filed.

contained dwelling units. This provided separate living quarters for Mr. Blum's parents.

## THE SEPARATION

Mr. Blum kept a very tight rein on spending in the household and in all aspects of their lives. Mrs. Blum became dissatisfied with these controls and the marriage. As a result she left the home in October of 1979. She left a note explaining her discontent. Mr. Blum pursued her and persuaded her to return. The reconciliation was of short duration and in June of 1980, they agreed to separate. The details of what happened next are in dispute, but this much is agreed: on June 11, Mr. and Mrs. Blum appeared together in the office of an attorney who had represented them in the past; Mr. Blum stated the terms of the agreement and Mr. and Mrs. Blum signed a handwritten agreement that night; counsel did not discuss with them their financial situation or their respective rights. By deed dated June 12, Mrs. Blum transferred her interest in their residence to Mr. Blum. Three days later, Mrs. Blum moved to her own apartment. On July 31, 1980, the parties signed a typewritten instrument which formalized the June 11 agreement.

## THE DIVORCE

In June of 1981, Mr. Blum filed suit for divorce on the grounds of voluntary separation and asked that the agreement of July 31, 1980 be approved. Mrs. Blum submitted an answer alleging the agreement was fraudulently induced. She also filed a cross bill. Mr. Blum filed an amended bill (entitled Supplemental Bill) followed by an Amended Supplemental Bill. To each bill an appropriate answer was filed.

The court heard the testimony and in an oral opinion granted the divorce on the grounds of mutual and voluntary separation to Mrs. Blum under the cross bill of complaint. He also granted substantial additional relief, which will be set forth in detail later.

## THE SEPARATION AGREEMENTS

The court in its order set aside the agreements of June 11, 1980 and July 31, 1980.

The agreement of July 31, 1980 recited that the parties had mutually and voluntarily separated and agreed that (1) they would continue to live separate and apart; (2) they mutually waived alimony; (3)(a) the wife would convey her interest in the home to the husband; (b) Mr. Blum could remain in the home as long as he wished; (c) upon sale after payment of the mortgage balance and the $25,000 to his parents, Mr. Blum would pay Mrs. Blum five percent of the net or a minimum of $5,000; (4) they confirmed their division of all personal property; (5) Mrs. Blum would receive $6,100 with which she could purchase a car for herself; (6) the wife would release the husband's credit union account to him; and (7) the husband could keep his two cars. The balance of the agreement contained mutual releases and acknowledgements that they both were fully informed of the other's circumstances. It further confirmed that each had had an opportunity to consult counsel and the agreement was freely and voluntarily made.

The July 31 document formalized the terms of the June 11 agreement and added the specific releases and formalities.

## THE COURT'S DECISION

After the trial the chancellor rendered his decision orally from the bench. He later changed a part of that decision by a memorandum in which he stated that the relief he awarded in his oral opinion was not permitted by law.

First we will address the court's oral decision. The chancellor discussed the procedural problems and the relief sought by Mrs. Blum and held "I don't think it needs to be specifically pleaded that the Court impose a constructive trust and that specifically the deed be set aside because if the Court finds that the separation agreement is invalid and

ought to be set aside, then by the domino theory, that causes the others to fail."

The chancellor then proceeded to make findings as a result of which he concluded that Mr. Blum was the "forceful personality" in the marriage, although the chancellor admitted that the specific acts which occurred during the marriage were not in and of themselves sufficient to substantiate that conclusion.

The chancellor said:

There has been the argument by the wife that the agreement was facially invalid. The cases which have found agreements to be unjust and inequitable on their face involve agreements that were completely lacking in any reasonable consideration, and that's basically the wording from *Bell v. Bell.*

This agreement is not lacking in any reasonable consideration.

\*　　\*　　\*　　\*　　\*　　\*

I don't believe that there was fraud involved. I think there was a full disclosure. There certainly was not any physical force applied upon the wife to cause her to enter into the agreement.

The chancellor went on to conclude that there was a confidential relationship between the parties based on Mr. Blum's domination. He reviewed the assets of the parties and opined

When this agreement is viewed in its totality, it's clear to me that the husband breached that confidential relationship. Setting the house aside for a moment, and just looking at the division that was made of the remaining property, the husband comes out on the heavy side, but when you add the house to it, it's so lopsided as to shock the conscience of this Court, and responsibility is on the part of the person who has had that trust and confidence placed in him to show by clear and convincing evidence that he did not violate that trust.

\*　　\*　　\*　　\*　　\*　　\*

Well, I find as a fact that that's what he said it would be, and that there was no negotiation in this case. It was dictated to her, and it was dictated to Mr. Muhl who dictated to his secretary who put it in that 31st of July agreement. Having found as I have just stated, the separation agreement is set aside.

The chancellor directed that the house, furniture and personal property which he "determined as marital property" be sold and the net proceeds equally divided. At that point he had not in his opinion labeled or advised what was marital property or its value.

He further directed that the husband hold the property in trust for himself and his wife. He concluded by stating there would be no monetary award based on "the division of property as established" and awarded $4,000 toward the wife's counsel fees.

The chancellor prior to signing a written order and without further hearing or argument, *sua sponte*, filed a Memorandum in which he stated that since he did not have authority to order a sale of the house, he intended to make a monetary award to adjust the equities of the parties. In the Memorandum, the chancellor identified the marital property, found its value and went on to state that

The Old Frederick Road Property is titled in the husband's name only, while the mortgage is the obligation of both as is the note held by the husband's parents.

Since this Court cannot relieve the wife of her responsibilities under the mortgage and the note, it is necessary to fashion the monetary award in such a way so as to provide her with the funds to meet her share of these joint obligations, and an amount equal to approximately one-half the value of the marital property after satisfaction of these obligations.

The order awarded a divorce to Mrs. Blum, set aside the separation agreement, ordered that a figurine collection was the property of Mrs. Blum, made a monetary award of

$62,500 and attorney fees to Mrs. Blum of $4,000, and certain incidental relief.

Mr. Blum appeals from so much of that decree which set aside the agreements, granted a monetary award and awarded counsel fees. We agree with Mr. Blum that the trial court was in error at least in part; we will reverse and remand.

## THE SEPARATION AGREEMENT

At one time in Maryland it was uncertain whether a husband and wife could enter into a separate maintenance agreement. The Court commented on this in *Wallingsford v. Wallingsford*, 6 H. & J. 485 (1825) and said at p. 489

Whether an agreement for a separate maintenance will be enforced, where such agreement rests in articles between the husband and wife, appears not to be settled.

Many years later, the Court concluded that separation agreements were valid to establish maintenance, although invalid to provide for the relinquishment of the right and duty of cohabitation. *Melson v. Melson*, 151 Md. 196, 205, 134 A. 136 (1926).

This dichotomy was ultimately resolved and today's separation agreements between husband and wife are valid for all purposes under Article 16 § 28 of the Code of Maryland (1957, Repl.Vol.1981), which provides in relevant pertinent part that

[a]ny deed or agreement made between husband and wife respecting alimony, support, maintenance, property rights, or personal rights, or any settlement made in lieu of alimony, support, maintenance, property rights or personal rights shall be valid, binding and enforceable to every intent and purpose . . . .

■ In most respects, separation agreements are contracts and are subject to the same general rules governing creation, construction, termination and rescission as are other contracts. *Eckstein v. Eckstein*, 38 Md.App. 506, 511, 379 A.2d 757 (1978) and cases cited therein; *see also*

*McClellan v. McClellan*, 52 Md.App. 525, 535, 451 A.2d 334 (1982), *cert. denied* 295 Md. 283 (1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 3119, 77 L.Ed.2d 1372 (1983).

An agreement or contract may be terminated by consent of the parties, or by either party, if such act is in accordance with its terms. At issue in the instant case, however, is not a termination under the contract but avoidance by one of the parties on the basis of duress. Duress, fraud or undue influence may be the basis to avoid a property settlement. *Saggese v. Saggese,* 15 Md.App. 378, 388, 290 A.2d 794 (1972). To establish duress there must be a wrongful act which strips the individual of the ability to utilize his free will. *Eckstein v. Eckstein, supra* at 512–513, 379 A.2d 757. A basic element of a contract is mutual assent; thus, where the agreement of one of the parties is forced or involuntary, he will not be bound by that commitment. *Central Bank v. Copeland,* 18 Md. 305, 81 A.D. 597 (1862). A contract which has been entered into as a result of undue influence or duress is not void, but is voidable. *Saggese v. Saggese, supra,* 15 Md.App. at 388, 290 A.2d 794. A condition precedent to the right to rescind requires that the party against whom relief is sought be restored substantially to the position which he held before the termination was completed. *Gaver v. Gaver,* 176 Md. 171, 4 A.2d 132 (1939); *Taylor v. Whitehurst,* 151 Md. 621, 631, 135 A. 428 (1926). Put another way, a party may not affirm the favorable part and avoid the unfavorable part.

A contract which may be avoided on the basis of duress may be ratified after the duress has been removed. The injured party must act to repudiate the agreement promptly or within a reasonable time after the removal of the duress, otherwise he may be deemed to have ratified the contract because of his silence and failure to act. *See Saggese v. Saggese, supra* 15 Md.App. at 388, 290 A.2d 794 and cases there cited. "The injured party may ratify the contract after the duress has been removed not only by his silence but also in various other ways, as, for example, by

continuing to act in accordance with the contract, or by continuing to accept or claim benefits flowing from it." 17 C.J.S. *Contracts* § 169 (1963).

Duress which permits avoidance of a contract consists of the use of coercion, the victim's loss of the ability to act independently and the entry by the victim into the contract. 17 C.J.S. *Contracts* § 168 (1963). The burden of proving each and every one of these elements remains with the person seeking to set aside the contract. When a confidential relationship has been shown to exist, however, the burden is upon the dominant party to establish that the agreement was fair in all respects. There is no presumption that the husband is the dominant partner in the marriage. Since that presumption does not apply, whether there is a confidential relationship becomes a question of fact. *Bell v. Bell*, 38 Md.App. 10, 379 A.2d 419 (1977), *cert. denied*, 282 Md. 729 (1978).

It has been said that absent proof of a confidential relationship, agreements not disclosing any injustice on their face are presumptively valid. *Bell v. Bell, supra*, at 14, 379 A.2d 419, citing *Cronin v. Hebditch*, 195 Md. 607, 74 A.2d 50 (1950). This proposition has been generally accepted and applied. The obverse, namely that agreements disclosing injustice on their face are presumptively invalid, has had very limited application to property settlements. The added factor of a confidential relationship has not altered the results.

We have found no cases in this jurisdiction involving a separation agreement between a husband and wife where the Court has held that the confidential relationship standing alone was sufficient to set aside the agreement.

We have found only two cases in this jurisdiction involving separation agreements where the Court has held that the contracts were so inequitable and unjust as to require that they be set aside for that reason, regardless of the confidential relationship. They are *Eaton v. Eaton*, 34 Md.App. 157, 366 A.2d 121 (1976), and *Cronin v. Hebditch*,

*supra.* The parties in those two cases have something in common which was mentioned in both cases, which set them apart from the other cases to which we are referred, and that is that there was a penniless wife and a comparatively wealthy husband.

The separation agreement was set aside in *Eaton v. Eaton, supra,* where the wife surrendered her interest in property worth about a quarter of a million dollars for $4,300. The agreement was also set aside in *Cronin v. Hebditch, supra.* There the husband was worth over $700,-000 and the wife was to receive $9,000 upon divorce.

In the other cases in which the issue arose, the agreement, even if set aside for other reasons, was not held inequitable and unjust on its face.

In *Bell v. Bell, supra,* the relinquishment by the wife of her interest in joint real estate worth $210,000 for $45,000 in property and cash was not sufficient to make a settlement agreement inequitable and unjust on its face.

The disparity between $2,500 and certain rights to use the house and child support paid to the wife and certain benefits to the children with retention by the husband of all the other assets including ultimate ownership of the $92,000 home, did not compel a finding of inadequate consideration in a suit seeking to set aside a separation agreement. *McClellan v. McClellan, supra.*

In *Owings v. Currier,* 186 Md. 590, 47 A.2d 743 (1946), where the husband gave up his right to a $45,000 property and the wife gave up a less valuable right, the Court refused to void the agreement on the ground that it was unfair and inequitable.

In *Eckstein v. Eckstein, supra,* the Court did not hold the agreement was on its face so inequitable and unjust that it was required to be set aside where the wife received approximately $1,000 to the husband's $40,000. The agreement was set aside, however, based on the unique factual situation presented in that case which was held to establish duress as a matter of law.

An agreement was not held inequitable or based on inadequate consideration where it provided that the husband would pay the wife $100 per week for their joint lives and two added years after his death, pay the debts of his wife up to $1,500, deliver to the wife furniture and effects in the Florida house and pay her attorney's fees of $2,500, and he would receive the entire proceeds of the Maryland home worth $40,000 and a home in Florida. *Jackson v. Jackson*, 14 Md.App. 263, 286 A.2d 778 (1972).

We return now to the instant case.

■ This Court cannot substitute its judgment for that of the chancellor as the trier of fact. Our scope of review is limited to whether those findings are clearly erroneous in light of all the evidence. We must accept the truth of all the evidence and all favorable inferences fairly deducible therefrom to support the factual conclusion reached by the chancellor. *McClellan v. McClellan, supra; Jacober v. High Hill Realty, Inc.*, 22 Md.App. 115, 121, 321 A.2d 838, *cert. denied*, 272 Md. 743 (1974). *See also Colburn v. Colburn*, 15 Md.App. 503, 292 A.2d 121 (1972).

■ The issue then is not whether we would have found as did the chancellor, but whether there was evidence to support his findings. There was evidence to support his conclusion that there was no fraud. There was evidence to support the finding of the chancellor that Mr. Blum was the dominant force in the marriage. The chancellor in his oral opinion carefully illustrated this domination: the regimented shopping expeditions; the required precise parking of the car; washing of the car wheels; budgeting constraints; lack of flexibility in arranging the food and clothing; the relative positions of the parties in the marriage; and Mrs. Blum's concern that he would not let her leave the marriage. The chancellor also found that the attorney who prepared the agreements sought to represent both Mr. and Mrs. Blum and that Mr. Blum dictated the terms of the agreement to that attorney. The chancellor relied on this to support his finding of domination.

■ This is not the first time the Court has seen parties apparently relying on the same attorney. This situation has arisen frequently enough to suggest to the members of the Bar that no matter how careful they may be to explain their relationship to each of the parties, they are advancing at their own peril. Where there is a potential conflict in interest between the parties, as is true in every domestic dispute, it is inappropriate to attempt to represent them both. This is true even where the parties appear to be in full accord at the time.

In this case, Mr. and Mrs. Blum approached an attorney who had represented them in the past and presented him with their separation agreement. Counsel never informed the parties of their respective rights, never inquired of the assets of the parties, and never advised the parties of any potential conflicts of interest which might arise as a result of his representing both of them. Not surprisingly, the potential conflict which exists in every domestic case developed into an actual conflict after the agreement was signed.

In Maryland, the Code of Professional Responsibility of the American Bar Association has been adopted. Md.Rule 1230. Canon 5 provides "A lawyer should exercise independent professional judgment on behalf of a client." Disciplinary Rule 5–105(A) requires a lawyer to

decline proffered employment if the exercise of his independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve him in representing differing interests, except to the extent permitted under DR 5–105(C).

DR 5–105(C) permits a lawyer to represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

Applying these rules to a very similar situation to that as the case *sub judice*, the Maryland State Bar Association Committee on Ethics opined that it is unethical for one attorney to represent both the husband and wife in the preparation of a separation agreement. In that case (Docket 78–25, April 11, 1978) the Committee responded to an inquiry by an attorney who had been contacted by a husband and wife who wanted a "pre-separation" agreement. The attorney had repeatedly inquired of the wife if she would like to employ independent counsel, but she insisted that she would sign an agreement that same day if it met with her approval. An agreement was drawn and signed. Thereafter the wife refused to sign a final separation agreement in accordance with the terms of the "pre-separation agreement", and after employing new counsel, she questioned the ability to enforce the "pre-separation agreement". The attorney then inquired of the Bar Association Committee whether it was unethical for one attorney to draw a separation agreement (or pre-separation agreement) that is signed by both parties. The Committee answered that since divorce actions are inherently adversarial and the potential of opposing interests on such issues as support, child custody, visitation, ownership and division of property is great, one attorney should not represent both the husband and wife.

Other jurisdictions have also dissuaded the representation by one attorney of both the husband and wife in divorce actions. In *Klemm v. Superior Court of Fresno County*, 75 Cal.App.3d 893, 142 Cal.Rptr. 509 (1977), the Court of Appeal held that as a matter of law, a purported consent of dual representation of litigants with adverse interests at a contested hearing would be neither intelligent nor informed; but if the conflict is merely potential, then the attorney can appear for the husband and wife on issues where they are fully agreed if the written consents of husband and wife are knowing and informed and are given after full disclosure by the attorney. *See also Lysick v. Walcom*, 258 Cal.App.2d

136, 65 Cal.Rptr. 406 (1968); *Ishmael v. Millington*, 241 Cal.App.2d 520, 50 Cal.Rptr. 592 (1966).

In *Columbus Bar Association v. Grelle*, 14 Ohio St.2d 208, 237 N.E.2d 298 (1968), the attorney filed a personal injury action on behalf of the husband. A few months later, the same attorney witnessed the signing of a separation agreement between husband and wife which had been prepared by the attorney on terms previously agreed upon by husband and wife. Part of the separation agreement provided that wife was to receive one-third of the net proceeds of husband's personal injury case. Subsequently the wife requested the attorney to obtain a divorce for her. After the divorce was final, and the personal injury suit had been settled, the wife requested her proceeds, but the attorney refused to disclose the amount of settlement. The matter was ultimately brought to a Board of Commissioners on Grievance on grounds that the attorney had violated the canons of ethics. The Court, based on a certified report from the Board and in view of the fact that there was no misrepresentation and there was full disclosure of his position, found that the attorney did not violate his oath of office but noted that

> [t]he fact that such misunderstandings are likely to occur under such circumstances must lead to the conclusion that only in the clearest cases should counsel hazard to represent interests which are or may become adverse, even after disclosing his dual representation. 237 N.E.2d at 300.

*See generally* "What Constitutes Representation of Conflicting Interests Subjecting Attorney to Disciplinary Action" 17 A.L.R.3d 835–854 § 7, and cases there cited, and "Malpractice: Liability of Attorney Representing Conflicting Interests", 28 A.L.R.3d 389–399 § 5.

Likewise, in *Crest Investment Trust, Inc. v. Comstock*, 23 Md.App. 280, 327 A.2d 891 (1974), where an attorney had chosen to act for both sides in a business transaction, this Court, based on Canon 5, emphasized the need for full disclosure of all possible dangers involved and that the legal

representation be fundamentally fair to both sides. Citing *In Re Kamp*, 40 N.J. 588, 194 A.2d 236 (1963), the Court at p. 303 set forth the requirements of full disclosure in terms not inapposite to the instant case:

> Full disclosure requires the attorney not only to inform the prospective client of the attorney's relationship to the seller, but also to explain in detail the pitfalls that may arise in the course of the transaction which would make it desirable that the buyer have independent counsel. The full significance of the representation of conflicting interests should be disclosed to the client so that he may make an intelligent decision before giving his consent.

Although counsel may have believed that he was merely acting as a "scribe" with regard to the Blum's separation agreement, based on the above cited cases and on the Ethics opinion given by the Bar Association, the very least counsel should have done was disclose to the parties the possible ramifications of his dual representation and their respective rights. While such dual representation may not necessarily result in the setting aside of the separation agreement, it leaves the door ajar for what occurred here.

As we said the chancellor found that Mr. Blum was the dominant partner in the marriage. In concluding that there was a confidential relationship, the chancellor failed to consider other factors as set forth in *Bell v. Bell, supra,* namely the age, mental condition, education, business experience, state of health and degree of dependence of the spouse at the time of the execution of the deed and the agreements of June 11 and July 31.

Next the chancellor found that the agreement on its face was not so inequitable and unjust that he would be required to set it aside. He then went on to find that the terms of the agreement shocked the conscience of the court because it was less than Mrs. Blum would have received in a Court of Equity. These two findings are not compatible.

In summary the chancellor found first that Mr. Blum was the dominant member of the family, second that based on that finding, it followed there was a confidential relationship, and third that the terms shocked his conscience and therefore the burden shifted to Mr. Blum to establish the fairness. Since Mr. Blum could not satisfy the chancellor of the fairness, the agreement was set aside and a constructive trust was applied to the property. The chancellor later dropped the constructive trust approach and ordered a monetary award.

What the chancellor should have done was to look at the consideration and determine if the terms were so unfair and inequitable as to require that the agreement be set aside. If they were not, and he held they were not, he should then have considered whether there was a confidential relationship; then he should have considered whether there was duress. If he found there was duress, he should next have considered (1) whether the conditions precedent to setting aside the agreement had been met, including whether the victim had retained the benefits; (2) whether the contract was thereafter ratified; and (3) whether laches applied. Then and only then should he have decided whether to set aside the agreement and reach the issue of a monetary award.

We reverse the judgment in this case because the chancellor was in error in setting aside the agreements. We remand this case to the chancellor to reconsider his decision based on the standards we have set forth. Since on remand he may determine that the agreements should still be set aside, we address the other issues presented.

## THE PROCEDURE

Mr. Blum contends that the pleadings did not state sufficient facts to justify setting aside the separation agreements of June 11 and July 31 and the deed. He further argues that the pleadings did not even seek that relief. Mrs. Blum not surprisingly does not concur.

We will first dispose of Mr. Blum's contention that there was no prayer that the court set aside the deed nor that the facts justified such action by the chancellor. The short answer is that the chancellor did not set aside the deed nor did Mrs. Blum request that relief at trial. The chancellor did not rule on that issue and it is not before us. Md.Rule 1085.

Mr. Blum urges us to reverse the trial court because the pleadings do not set forth sufficient facts upon which the relief could have been granted. Mr. Blum could have filed a demurrer in the court below to test this claim. Had he been unsuccessful, he would have preserved this issue for review under Maryland Rules of Procedure Equity Rule 373c. Mr. Blum did not follow that tactical approach and did not preserve this point for review. Rule 1085.

This brings us to the allegation that the pleadings did not seek abrogation of the agreements of June 11 and July 31. Equity pleadings and practice have long included the use of a general prayer for relief. The Maryland Court of Appeals in *Gibson v. McCormick*, 10 G. & J. 65, 108 (1838), explicated that "[n]othing is better settled than that if a complainant cannot obtain the specific relief for which he prays, he may obtain any relief consistent therewith, warranted by the allegations in his bill, provided it contains a prayer for general relief." *See also Terry v. Terry*, 50 Md.App. 53, 60, 435 A.2d 815 (1981).

We turn then to the pleadings in this case. Mrs. Blum in her first pleading, Answer to Bill of Complaint, sought affirmatively, "[t]hat the purported Separation Agreement between the parties dated July 31, 1981, be rescinded and set aside." She also sought the wide range of remedial relief available under the Property Disposition in Divorce and Annulment Act, a determination of the marital property monetary award and general relief in her Cross Bill. She repeated the prayers for relief including rescission of the July 31 agreement in her Answer to the Supplemental Bill and the Answer to the Amended Supple-

mental Bill. The chancellor set aside the June 11 handwritten precursor of the July 31 agreement under the prayer for general relief. This action was altogether consistent with the specific prayers for relief as delineated in Mrs. Blum's first pleading.

## MONETARY AWARD

Mrs. Blum's counsel in effect conceded at argument that the chancellor erred in failing to properly take into account the obligations due upon the house and the fact that the husband also was jointly and severally liable on the notes.

Since we will remand on other grounds, we need not go into detail as to the basis of that contention except to point out to the chancellor that if he determines that a monetary award is appropriate, he should consider the impact of *Schweizer v. Schweizer*, 55 Md.App. 373, 378, 462 A.2d 562 (1983), *cert. granted*, December 7, 1983. In *Schweizer* we held that if one of the spouses incurs debt during the marriage to purchase marital property, and that debt or a portion thereof is outstanding when a monetary award is being considered, the value of the marital property qualified for equitable distribution must be adjusted downward to reflect that liability.

## COUNSEL FEES

Mr. Blum complains that the wife is employed and counsel fees may only be awarded if her income is insufficient to care for her needs, and further complains that an award cannot be made directly to the attorney for the opposing party.

The general rule with respect to counsel fees is set forth in *Danziger v. Danziger*, 208 Md. 469, 475, 118 A.2d 653 (1955):

The amount of the award of counsel fees is within the discretion of the chancellor and, although his discretion is subject to review by this Court, the award should not be

disturbed unless he exercised his discretion arbitrarily or his judgment was clearly wrong.

Upon review of the record, we cannot find that the chancellor abused his discretion in ordering Mr. Blum to pay $4,000.00 towards Mrs. Blum's counsel fees.

Article 16, Section 3, of the Annotated Code of Maryland provides in pertinent part

The court may order that any amount awarded for attorney's fees be paid directly to the attorney and may enter judgment in favor of the attorney, who may then enforce the order in his own name in accordance with the Maryland Rules.

This act took effect July 1, 1980 and was to apply to cases filed after that date. The case *sub judice* was filed on June 18, 1981. Therefore, it was proper for the chancellor to order that counsel fees be paid directly to Appellee's counsel and to enter judgment in favor of Appellee's counsel. Accordingly, it was also proper for Appellee's counsel to file a Fieri Facias and Writ of Fieri Facias on Judgment, since her pleadings were in accordance with Rule 685, Rule 1016 and Rule 1017 of the Maryland Rules of Procedure.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.

COSTS TO BE BORNE BY APPELLANT AND APPELLEE EQUALLY.